# Mitchell *v.* The State.

### *Indictment for Murder.*

1. *Murder; statutory degrees of.*—The statutory provisions of Alabama, as to the different degrees of murder (Code of 1876, § 4295), explained, illustrated, and distinguished from the statutory provisions of Pennsylvania and New York.

2. *Homicide perpetrated by act greatly dangerous to lives of others, and evidencing depraved mind regardless of human life.*—A homicide, "perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life," is, by the terms of the statute, murder in the first degree. This provision of the statute applies to homicides committed from "universal malice," as it is called in the books; as by purposely discharging a loaded gun into a crowd of people, or wrecking a passenger train on a railroad, whereby one or more persons are killed; but, *ex vi terminorum,* it excludes a homicide which is committed by a blow or injury intentionally aimed at and inflicted on the person killed, though such homicide may be murder in the first degree under another clause of the statute. Hence, where the homicide was committed by a blow with an oaken stick, intentionally aimed at the deceased, it is error to instruct the jury, "that if the homicide was perpetrated by an act greatly dangerous to the life of the deceased, and evidenced a depraved mind regardless of human life, it would be murder in the first degree."

3. *Self-defense, manslaughter, and murder in second degree.*—When a homicide is committed on sudden provocation, without formed design, it may be murder in the second degree, manslaughter in the first degree, or self-defense, according to the attendant circumstances: if the provocation was mere words, however abusive and insulting, it is murder in the second degree; if a blow or injury given or threatened, not calculated to produce death or great bodily harm, it is manslaughter in the first degree; and if a blow or injury given, or apparently about to be given, calculated to produce death or great bodily harm, the slayer himself not having intentionally brought on the difficulty, and not being otherwise able to escape, it is self-defense.

4. *Error without injury; rule as to, in criminal cases.*—In a criminal prosecution for murder, the doctrine of error without injury, as in civil cases, will not be applied; hence, the judgment of conviction in this case was reversed, and the cause remanded, on account of an erroneous charge to the jury as to the constituents of murder in the first degree, although the conviction was for murder in the second degree, which operated an acquittal of the higher offense.

FROM the Circuit Court of Hale.

Tried before the Hon. GEO. H. CRAIG.

The prisoner in this case, Robert Mitchell, was indicted for the murder of "George, whose other name is to the grand

jury unknown, by striking him with a piece of wood," or, as alleged in the second count, "with a deadly weapon, to the grand jury unknown;" was convicted of murder in the second degree, and sentenced to the penitentiary for the term of fifteen years. "On the trial," as the bill of exceptions states, "the evidence for the State tended to show that, before the finding of the indictment, and in said county, the defendant and five or six others were at the house of one York Evans; that there was an old bedstead in front of the door of the house, and three or four persons were playing around it with bed-slats; that neither the deceased, who was a young boy and a stranger to all present, nor the defendant, was engaged in this playing; that two of said persons were striking at each other, over the head of the deceased, when he said: '*If you are playing, it is all right; but, if you are not, and you strike me, you will fall, and that damn quick.*' The defendant's brother was engaged in said play, and the defendant was sitting a short distance from the parties; and when the deceased made said remark, the defendant got up, and went to deceased, placed his hand in his breast, and told him not to 'cuss' when he talked to him. The deceased remarked, '*I will not, if you don't cuss when you talk to me.*' The deceased had picked up a bed-slat, and was leaning on it, inside of the bedstead. The defendant went around the house, at a distance of some twenty feet, and returned to deceased, with quite a heavy oak slat of wood. Two persons attempted to prevent him from reaching the deceased, but he passed around them; went to where the deceased was still leaning upon said slat, and, raising said heavy slat of wood, struck the deceased on the head. The deceased fell to the ground, and the defendant jumped upon him; and when pulled off, he said, '*If they had not taken him off, he would have cut him to pieces.*' The deceased died, from the wound, that night. The evidence for the defendant tended to show, that a knife was found at the spot where the deceased fell, and that the defendant, at the time he was pulled off the deceased, said: '*You know why I did it. Don't you see that knife in his hand?*' and that the defendant requested parties present to do all they could for him, and he would pay for it. This being all the evidence, the court charged the jury, among other things, that if the homicide was perpetrated by an act greatly dangerous to the life of the deceased, and evidenced a depraved mind regardless of human life, it would be murder in the first degree."

The defendant excepted to this charge, and it is the only matter here presented for revision.

THOS. J. SEAY, for the prisoner, cited *Darry v. The People*, 2 Parker's Crim. Rep. 606–49.

JOHN W. A. SANFORD, Attorney-General, for the State.—The charge is in the very language of the statute (Code, § 4295), and is therefore correct.

STONE, J.—Our statute (Code of 1876, § 4295), while it has retained as murder every species of homicide which was murder by the common law, has divided that highest offense against persons into two grades : murder in the first degree, and murder in the second degree. Murder in the first degree is further divided, and defined in four classes : *First*, homicides perpetrated by "poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing." The employment of poison as the agent, or lying in wait to do the deed, either is made sufficient evidence within this class. To come within the other clause, the act must be qualified by each of the named adjectives. Willful—governed by the will, without yielding to reason. Deliberate—formed with deliberation, in contradistinction to a sudden and rash act. Malicious—with fixed hate, or done with wicked intentions or motives, not the result of sudden passion. Premeditated—contrived or designed previously. All these qualities must coexist, to bring the crime within this clause. The law has declared no length of time these wicked elements shall be shown to have existed; and they may be all grouped under the very expressive phrase, *formed design*. To come within this class, there must have been a previously formed purpose to take the life of him who is slain, and it must be accomplished by the voluntary, intentional employment of means calculated to produce death. We can not here declare or define all the acts, and the protean forms of human conduct, which evidence this formed design. They are discussed in the many elementary works and adjudged cases which treat of the crime of felonious homicide. This grade of crime is frequently committed during personal rencontres, into which the parties enter mutually, or in many cases in which the party slain strikes the first blow. Murderers sometimes provoke an enemy, or intended victim, to assault them, that, under the protection which the law is supposed to furnish them, they may wreak vengeance upon him, who, by this contrivance, is made to appear to be the aggressor. A homicide, thus perpetrated, is a most atrocious murder in the first degree. We will resume this discussion further on in this opinion. This first class embraces every species of homicide by unlawful force,

intended for and aimed at the victim, which our statute denounces as murder in the first degree.

*Second.* Homicides committed in the perpetration of, or attempt to perpetrate, other named crimes. This class needs no explanation. To secure a conviction under it, it is not necessary that the offender should have contemplated, intended, or willed the death of his victim. The combined turpitude of the crime perpetrated or attempted, and the fatal, though unintentional result, raise the offense to murder in the first degree. The first and second classes of our statute defining murder in the first degree are copied from the Pennsylvania statute of 1794. No other murders at common law are murders in the first degree under their statute.—See 1 Russell on Crimes, by Davis, Metcalfe & Sharswood, p. 482, and notes; *Pennsylvania v. McFall*, Addis. 257; *Mitchell v. State*, 5 Yerg. 340; *Dale v. State*, 10 Yerg. 551; *Clark v. State*, 8 Humph. 663; 2 Whar. Am. Cr. Law, §§ 913, 913a.

*Third.* Homicides "perpetrated from a premeditated design, unlawfully and maliciously to effect the death of any human being, other than him who is killed." This has all the ingredients of the first class, described above, except that in attempting and intending to kill one person, the offender kills another, without intending it. The same wicked, felonious purpose exists in this, as in the first class, and the same injury to the peace and dignity of the State is done; for the law can not institute a comparison between the values of the lives of its several citizens.

*Fourth.* This class brings up the question presented by this record. It embraces all homicides "perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life." The act, to come within this class, must be greatly dangerous to the lives of others; must be of such character as to evidence—prove—that the offender had a depraved mind, regardless of human life; and must be without any preconceived purpose to deprive any particular person of life. If there was such preconceived purpose to deprive a particular person of life, the offense would fall under the first or third of the above classes, dependent on the further inquiry, whether the offender killed the person intended or another. It will be observed, however, that this fourth class omits all mention of the words, malice aforethought, formed design, willful, deliberate, malicious, premeditated, unlawfully and maliciously, some of which are found in all the common-law definitions of murder, save that from universal

malice. If a blow or injury, intentionally aimed and inflicted on a particular person, the act being greatly dangerous to life, and itself evidencing a depraved mind regardless of human life, be ruled to be murder in the first degree, then this clause fixes a much lower standard of evidential requirement, than do the classes one and three above mentioned. And this is all the more manifest, when we reflect that this clause dispenses with all preconceived purpose to deprive any particular person of life. A blow or injury, unlawfully and intentionally aimed and inflicted on a person, by an act greatly dangerous to life, and actually producing death, under such circumstances as to evidence a depraved mind regardless of human life, could not be inflicted without a preconceived purpose to deprive some particular person of life.— See *McManus v. State*, 36 Ala. 285. The two propositions are incompatible. We think the legislature, in this clause, intended to raise to the high grade of murder in the first degree those homicides which are the result of what is called "universal malice." By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim. The supreme depravity shown in this so-called universal malice, is considered as the equivalent of the strong adjectives, willful, deliberate, malicious, and premeditated, which characterize the first class of murder in the first degree.

Speaking of murder, Mr. Blackstone, 4 Com. 200, says : "Neither shall he be guilty of a less crime, who kills another in consequence of such a willful act as shows him to be an enemy to all mankind in general ; as going deliberately, and with an intention to do mischief, upon a horse used to strike, or coolly discharging a gun among a multitude of people. So, if a man resolves to kill the next man he meets, and does kill him, it is murder, although he knew him not ; for this is universal malice." And we may mention the intentional wrecking of a passenger train on a railroad, by which a life or many lives are destroyed, as another instance of universal malice. The definition given in the statute, of this class, four, brings it precisely within the influence of the principle stated, and shows that this fourth class of murders in the first degree was intended to embrace homicides committed from universal malice.

This provision of our statute was taken substantially, and almost literally, from the New York Revised Statutes. In *Darry v. People*, 2 Park. Cr. Rep. 606, their statute came before the Court of Appeals of that State. Three of the jus-

tices delivered separate opinions in the cause, and construed the clause as we have done. Five of the seven justices concurred. Able opinions were delivered, two of them by Denio and Selden, J J., conclusively establishing the construction we have above declared. In neither of the classes numbered two, three, four, above, is there a specific intent to take the life of the person slain. The gravity of the offense, in each case, is made up of the wicked act done or attempted, which, without specific intent, caused the death. But the New York statute, as construed in *Darry v. People, supra*, was, in one very important respect, wholly unlike ours. It defined murder as consisting of three distinct classes, and left all other unlawful homicides, as known at the common law, to fall under the general designation of manslaughter. This reduced many common-law murders to manslaughter; and, as was shown in the decision rendered, reduced Darry's crime to manslaughter, when, under the rules of the common law, he was guilty of a most atrocious murder. Our statute is different, first, in making and declaring a larger number of homicides to be murder, and in classifying many of them as murder in the first degree; and, second, in declaring that "every other homicide, committed under such circumstances as would have constituted murder at common law, is murder in the second degree." So, every killing, which would be murder at the common law, is murder, either in the first or second degree, under our statute. The enumerated common-law murders fall within the first degree. The non-enumerated fall within the second degree.

What we have said above shows that, in the charge given, the Circuit Court misconstrued the fourth subdivision of our statute defining murder in the first degree. The facts and intents supposed in the charge do not amount to what the law calls universal malice; and it follows that, under that fourth class, the defendant could not be guilty of murder in the first degree. But we do not intend to be understood as affirming that, under the facts of this case, the defendant could or could not be found guilty of murder, either in the first or second degree. A homicide, committed by direct force, can not be murder in the first degree, unless there was an intention to kill. The intention is usually found, in the absence of positive proof, from the character of the instrument used, the evidence of contrivance, method, self-possession, deliberation, previous malice, want of provocation. Deliberation need not necessarily be long. The law has laid down no particular duration for the existence of formed design. It is sufficient that it be formed, and not engendered by passion suddenly aroused. If this formed design exist—

if the killing be willful, deliberate, malicious, and premeditated, then the offense is murder in the first degree. The jury determines this from all the surrounding or attending circumstances. A homicide committed without these ingredients, is not murder in the first degree, within the first or third class.

But there is another step between murder in the first degree and manslaughter. Mere words, no matter how insulting, never reduce a homicide to manslaughter. Manslaughter is the unlawful killing of a human being without malice; that is, as the unpremeditated result of passion-heated blood—caused by a sudden, sufficient provocation. And such provocation can, in no case, be less than an assault, either actually committed, or menaced under such pending circumstances as reasonably to convince the mind that the accused had cause for believing, and did believe he would be presently assaulted; and that he struck, not in consequence of a previously formed design, general or special, but in consequence of the passion suddenly aroused by the blow given, or, apparently, about to be given.

When the fatal blow is given in consequence of passion suddenly engendered by a blow given, or which apparently is about to be given, then another inquiry arises: is the blow given, or about to be given, calculated to produce death, or grievous bodily harm? If it is, and the person thus assaulted has not brought on the difficulty for the purpose, and if he can not otherwise escape the danger, he may strike in self-defense, and continue till he relieves himself of the peril, even to the slaying of his adversary. But, if the blow given, or about to be given, be not such as to endanger his life, or to expose him to grievous bodily harm, as the law defines that term, then a fatal blow struck by him, even from sudden passion, and without formed design, is manslaughter in the first degree. And a killing under circumstances which do not amount to proof of formed design—willful, deliberate, malicious, and premeditated—which is defined above as constituting murder in the first degree, and which is not toned down to manslaughter, or self-defense, as defined above, is murder in the second degree.

We have spoken of formed design as of two classes, general and special. The former is evidenced by carrying weapons likely to produce death, with the purpose previously formed to use them in resentment of any blow that may be received, come from what quarter it may, even though the blow be of a character not endangering life or limb. Such formed design has no particular person as its objective aim. It is aimed at whoever may become an assailant. If prepara-

[Mitchell v. The State.]

tion be made, and the design be formed and executed, by slaying an adversary in resentment or resistance of a blow not likely to produce death, or inflict grievous bodily harm, this savors largely of the extreme wickedness of universal malice, and would be murder; and if such design was formed willfully, and carried into execution pursuant to such formed design, this would be murder in the first degree. On the other hand, if the fatal injury was inflicted in the reasonable belief of impending danger of death, or of grievous bodily harm, shown by present, existing circumstances, this would be self-defense, unless the circumstances show that the difficulty was provoked or brought on by the slayer, to furnish him a pretext or excuse for using a deadly weapon; in which event, the offense would be murder in the first degree. Formed design, special, differs from such design general, only in the fact that it is aimed at, and the injury inflicted on, a particular person had in view. The same rules of criminality *vel non* obtain, as those above declared. It all depends on the nature of the preparation, and the purpose of the formed design. If it be to repel aggressive assault, not provoked, which is calculated to produce a reasonable belief of danger to life, or of grievous bodily harm, this is excused on the doctrine of self-defense. If to resent an insult, or abusive language, an assault or battery that does not endanger life or limb, or an assault provoked for the purpose, no matter how grievous, this is murder. There can be no manslaughter in such a homicide as this; for manslaughter in the first degree is the result of passion suddenly engendered, and without premeditation, from present provocation, but in no case less than an assault. Manslaughter in the second degree is when the homicide results from the commission of a misdemeanor, or civil tort, but which result was not intended or contemplated.

In *Judge v. The State*, at the present term, we discussed the distinction between murder and manslaughter, and do not propose to consider it further at this time. A portion of the charge in that case, not discussed in the opinion of this court, is amenable to the same criticism, and fell into the same error as to the fourth class of murder in the first degree, above pointed out, which is the only error committed in the trial of this cause.

Following what we said in *Ex parte Nettles*, at the present term, we may add, the definition and constituents of the crime of murder have come to us from the common law, that grand, colossal system, which, in the purity and elevation of its morals, the maintenance of right and repression of crime, the equal protection of all in the enjoyment of life, liberty

and property, challenges the admiration of the world. Our statutes, as we have shown, have classified murders, but in no instance have they reduced a common-law murder to a lesser defense.—See Code of 1876, § 4295. Every murder at common law, is murder under our statutes. If it now requires a higher degree of criminality to secure a conviction of murder than it did at common law, the fault is not in the law. It is in its lax and falsely merciful administration. When the homicide is not shown to be within one of the four classes of murder in the first degree, and yet falls within the definition of murder at the common law, it is murder in the second degree.

The case of *Rex v. Thomas*, 7 Carr. & Payne, 817, bears directly on the question last above discussed. It was tried before Baron PARKE, one of England's profoundest criminal jurists. "The prisoner and prosecutor were at a beer house, together with several other persons. Some words passed between the prisoner and a third person; after which, he was seen walking up and down the passage of the house, with a sword-stick in his hand, with the blade open, and was heard to say, 'If any man strikes me, I will make him repent of it.' He was desired to put up the stick, which he refused to do; and shortly after, the prosecutor, ignorant of what occurred, but perceiving the prisoner was creating a disturbance, struck the prisoner twice with his fist, when the prisoner stabbed him." In charging the jury, the learned Baron said : "If you see that a person denotes, by the manner in which he avenges a previous blow, that he is not excited by a sudden transport of passion, but under the influence of that wicked disposition, that bad spirit, which the law terms 'malice,' in the definition of willful murder, then the offense would not be manslaughter. Suppose, for instance, a blow were given, and the party struck beat the other's head to pieces by continued, cruel, and repeated blows; there, you could not attribute that act to the passion of anger, and the offense would be murder. And so, if you find that, before the stroke is given, there is a determination to punish any man who gives a blow, with such an instrument as the one which the prisoner used; because, if you are satisfied that, before the blow was given, the prisoner meant to give a wound with such an instrument, it is impossible to attribute the giving such wound to the passion of anger excited by that blow; for no man who was under proper feelings—none but a bad man of a wicked and cruel disposition, would really determine beforehand to resent a blow with such an instrument."

We entirely concur in these views, which all must admit

are a correct exposition of the common-law doctrine on this most pernicious practice of wearing weapons, with formed design to use them on an insufficient emergency.

The prisoner in the present case, having been convicted of murder in the second degree, was thereby acquitted of the higher offense of murder in the first degree, and can not, on the next trial, be convicted of a higher crime than murder in the second degree.—*Bell and Murray v. The State*, 48 Ala. 684. The only error shown in the record is in the definition of murder in the first degree, and the defendant was acquitted of murder in that degree. If this were a civil suit, the error would be immaterial, and without injury. But, in a prosecution for an offense of this high grade, we are unwilling to apply the doctrine of error without injury. We can not know what influence the charge may have exerted on the jury.

Reversed and remanded. Let the prisoner remain in custody, until discharged by due course of law.

### Indictment for Murder.

