# Williams *v.* The State.

*Indictment for Murder.*

1. *Manslaughter in first degree.*—To constitute manslaughter in the first degree (Code, § 4301), it is not necessary that there should be a specific intention to kill; but there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence.

2. *Error without injury in criminal case.*—The doctrine of error without injury is never applied in a criminal case, since the court can not measure the amount of influence an erroneous instruction may exert in the deliberations of the jury.

3. *Charge ignoring duty to retreat, or evidence that parties fought willingly.*—A charge asked in a case of homicide, which ignores the duty of retreat by the defendant, "if it can be done without increase of peril," or the evidence showing that the parties fought willingly, or by agreement, is properly refused.

4. *Charge as to presumption of malice from use of deadly weapon.*—A charge asked, asserting that, "before malice can be inferred from the use of a weapon, it must be shown to be a deadly weapon in contemplation of law—such a weapon that death would be the natural, reasonable, or probable consequence from the use of it"—asserts a correct legal proposition, and ought to be given.

5. *Charge as to murder in first degree.*—A charge asserting that, "if the defendant went out of the house with the intent to get the advantage of the deceased, and with the formed design to kill him, he is guilty of murder in the first degree," is erroneous, since the facts hypothetically stated do not necessarily constitute murder in the first degree.

FROM the Circuit Court of Pike.

Tried before the Hon. JNO. P. HUBBARD.

The defendant in this case, Guy Williams, was indicted for the murder of Frank Berry, "by striking him with a

stick;" was tried on issue joined on the plea of not guilty, convicted of manslaughter in the first degree, and sentenced to the penitentiary for the term of five years. On the trial, as appears from the bill of exceptions, it was proved that the killing occurred at a "dance and public supper in the neighborhood," which was attended by the defendant and the deceased; that while the deceased was dancing, the defendant pinned a white handkerchief to the back of his coat, and this caused an altercation between them; that the deceased, who had a pistol in his pocket, was taken out of the room by other persons, on account of his violent language, and was not allowed to come back until, after the lapse of a half-hour or more, he promised to "drop the matter and say nothing more about it;" that when he returned to the room, "he again commenced cursing the defendant, who again told him that he did it only in fun;" that the deceased said they must go out of the house and settle it; that the defendant then started to the door, keeping his eye on the deceased, and stepped down outside of the door, in the dark, and outside of the light shining from the house; that the deceased followed him, and, by the time he put his foot on the doorstep, was struck by the defendant across the nose, about where it unites with the forehead; that the stick was about the size of an ordinary walking-stick, and that the deceased died from the effects of the blow about ten days afterwards." Some of the witnesses testified that the deceased, when he came back into the house, had an open knife in his hand, but others said they did not see it; and there were some other discrepancies in the testimony of the several witnesses. The bill of exceptions purports to set out all the evidence, but a fuller statement of it is not necessary.

"The defendant requested the following charges in writing to the jury, and excepted to the refusal of each." (1.) "If the defendant, in repelling an unprovoked and aggressive attack, struck with a weapon not calculated to produce death, or the natural, probable and reasonable use of which would not cause death, and death ensued by accident, and he was justified in the striking, then the jury must find him not guilty." (2.) "When the State has proved that there was a killing, the burden of proof is then on the defendant to show circumstances of justification, excuse, or alleviation; else it is murder." (3.) "It would be murder in the first degree, if the jury believe from the evidence that the defendant, at the time of the act, thought of his

2

purpose to kill the deceased, and then put such purpose into execution." (4.) "If the jury believe from the evidence that the defendant killed the deceased on a fully formed and conscious design to kill, and with a weapon prepared for the purpose, it would be murder in the first degree." (5.) "If the jury believe from the evidence that the defendant was not at fault in provoking or bringing on the difficulty, and that he was being pursued by the deceased with a knife in his hand, and struck the deceased with a weapon not reasonably calculated to produce death, and did so to resist such assault, and death ensued by misadventure,—then this would be self-defense." (6.) "If the jury believe from the evidence that the defendant was not at fault in provoking or bringing on the difficulty, and struck to repel an assault, and that death ensued by misadventure, this would be self-defense." (7.) "If the jury believe from the evidence that the defendant was free from fault in provoking or bringing on the difficulty, and struck the blow under the reasonable belief of impending danger to his life, or of grievous bodily harm, as shown by the circumstances then surrounding him; this would be self-defense, although the danger to life or limb was not real—that it is sufficient if the circumstances surrounding him were such as to impress him with the reasonable belief that such danger existed." (8.) "If the jury believe from the evidence that the defendant was free from fault in provoking or bringing on the difficulty, and was being followed by the deceased in a threatening manner with a knife, and struck the deceased with an ordinary walking-stick, for the purpose of repelling the assault, and with no intention of taking life, or of inflicting any greater harm on the deceased than to cause him to desist from the assault; and if the jury further find that the ordinary, natural and probable use of such stick would not result in death,—then this would be self-defense." (9.) "Before malice can be inferred from the use of a weapon, it must be shown to be a deadly weapon in contemplation of law—such a weapon that death would be the natural, reasonable, or probable consequence from the use of it."

The defendant excepted, also, to several charges given at the instance of the State, among which were these: (2.) "Malice means a wrongful [act], done intentionally, without just cause or excuse." (6.) "If the jury believe from the evidence that the defendant went out of the house with the intent to get the advantage of the deceased, and

[Williams v. The State.]

with the formed design to kill him, he is guilty of murder in the first degree."

JNO. D. GARDNER, for the appellant.

THOS. N. MCCLELLAN, Attorney-General, for the State.

STONE, C. J.—Since the trial of this case in the Circuit Court, the principles declared in *McManus v. The State*, 36 Ala. 285, have been explained and somewhat modified. *Harrington v. State, ante,* p. 9. The case last mentioned presented the inquiry in respect to the instrumentality by which the homicide was brought about, somewhat like the act from which death seems to have resulted in this case. In such case, death would not ordinarily ensue from the force employed. We quoted without disapproval what was said by Tilghman, C. J. in *Com. v. Gable,* 7 Serg. & R. 423, as follows: "I take it that evidence of a positive intention to kill is not necessary to constitute the crime of voluntary manslaughter. It is sufficient if there be such acts of violence as may be expected to produce great bodily harm. On the contrary, involuntary manslaughter is where it plainly appears that neither death nor great bodily harm was intended, but death is accidently caused by some unlawful act, or an act strictly lawful in itself, but done in an unlawful manner, and without due caution." In the same case—Harrington's—this court said: "Whether the killing is intentional, express or presumed, or unintentional, is the particular characteristic which distinguishes voluntary from involuntary manslaughter—whether death may be the probable consequence of the act, as contradistinguished from accident or misadventure. Voluntary, as the antithesis of involuntary, is the distinguishing quality; not intentional, as amounting to a specific intention to kill. Intention to do great bodily harm is sufficient. . . . . In order to constitute manslaughter in the first degree, there must be either a positive intention to kill, or an act of violence from which, ordinarily, in the usual course of events, death or great bodily injury may be a consequence." We have reproduced the identical language employed in Harrington's case, that in the further trial of this cause its principles may be observed.

In *Mitchell v. State,* 60 Ala. 26, we declined to apply the doctrine of error without injury to questions arising on prosecutions for crime, and we have adhered to it since. We

need give no reasons for this ruling, farther than to say, that we have no rule for measuring the amount of influence an erroneous instruction may exert in the deliberations of the jury.

In the charges set down as asked by defendant, and refused by the court, we suppose three of them, Nos. 2, 3 and 4, are improperly placed in that class. They are not such charges as we can suppose defendant would have asked, and certainly he was not injured by their refusal. If these charges were asked by the State, given, and separately excepted to, Nos. 3 and 4 are faulty, and No. 2 is not full enough.—*Hadley v. State,* 55 Ala. 31 ; Harrington's case, *supra ; Fallin v. State, ante,* p. 5.

Charges 1, 5, 6, 8, asked by defendant, each ignores important elements of law and fact; of law, in that they are silent as to the duty of retreat, if it can be done without increase of peril; and of fact, because each pretermits all mention of the fact, about which there appears to have been no controversy, that the parties left the house with a view, and under an implied agreement, to engage in a combat outside of the house. This, if true, would cut off the right of complete justification.

Charge 7 is not full enough, partly because of material omissions, noted in commenting on charges 1, 5, 6, 8, and partly for other imperfections.—*DeArman v. State,* 71 Ala. 351.

Charge 9 ought to have been given.

Charge 2, given at the instance of the State, is faulty, when interpreted in the light of the testimory before the jury. If the words, "or mitigation," or "extenuation" had been added, it would have been free from error.—*Fallin v. State, supra.* Charge 6 was improperly given. A killing, under the facts hypothesized, would not necessarily be murder in the first degree.—*Mitchell v. State,* 60 Ala. 26.

Reversed and remanded.