# Lewis v. The State.

*Indictment for Murder.*

1. *Opinion of witness as evidence.*—In a trial for homicide, it is competent for the defendant to explain the fact of his flight by proving his personal fear of the father of the deceased, but the testimony of a witness that "the defendant seemed afraid of" the father of the deceased, is not admissible for this purpose, being a mere opinion of the witness, based on the conduct or declaration of the defendant himself, if supported by any fact at all.

2. *Uncommunicated intention.*—In a trial for homicide, the defendant should not be permitted to testify as to the uncommunicated intention with which he did the act which caused the death of the deceased.

3. *Manslaughter in the first degree.*—If one intentionally does an act calculated to take life and death is produced by it, the homicide is manslaughter in the first degree, though there is no actual intention to take life.

4. *A killing is not accidental when the act causing death is done intentionally.*—In a trial for homicide, where it is uncontroverted that the defendant intentionally did the act which produced death, it is proper for the court to refuse to charge the jury on the hypothesis that the killing was "accidental."

5. *Exception to general charge.*—In a trial for homicide, if the court in its general charge fails to instruct the jury on the hypothesis that the defendant's evidence is true, this, in the absence of any request by the defendant for such instruction, is no ground for exception to the general charge given by the court *ex mero motu*.

6. *Court may explain written charges given.*—The court may, in oral charges given at the request of one party, state the meaning of written charges already given at the request of the other party.

7. *Abstract, confused, or misleading charges* are properly refused.

APPEAL from the City Court of Montgomery.

Tried before the Hon. T. M. ARRINGTON.

The appellant, Andrew Lewis, was indicted for the murder

of Henry Lovelace "by striking him with a brick or a brick-bat," and was convicted of manslaughter in the first degree.

The evidence tended to show that the defendant, who was in the employ of A. S. Lovelace, the father of the deceased, was riding on one of the streets of Montgomery in a wagon with the deceased and another boy; that the defendant got out of the wagon to speak to some one, gave the lines to the other boy, Houston Johnson, and told him to drive on, and he would catch up with them; that when defendant started to catch up with the wagon it was some distance ahead, and he called to Houston Johnson to stop, which he did; that just as the defendant was nearly to the wagon, Henry Lovelace snatched the lines from Houston Johnson, and drove on. The defendant tried to catch the wagon, and called to Henry to stop, and, upon his failing to do so, he picked up a quarter of a brick and threw it at Henry, striking him just above the right ear, and causing his death about a week afterwards. The State proved the flight of the defendant, and his subsequent arrest. The evidence for the defendant tended to show that, while trying to catch the wagon, after he had called to Henry Lovelace to stop, he picked up a piece of brick and pitched it at the wagon; that when the brick-bat struck Henry, the defendant said that he did not intend to hit Henry, and said to him, "Hush, Henry, don't cry; I did not go to hurt you;" that defendant told Henry's mother, when asked by her what was the matter with the boy, that he had hit him with a piece of brick, but that he did not intend to do so. The evidence further tended to show that the defendant, having been told by the boy's mother to leave her house, stayed with one Henry Gilmer, near Montgomery, until a few days after the boy's death; and when he heard that A. S. Lovelace, the boy's father, was hunting for him, he left, and went to Bullock county; and that when Lovelace came there after him with a Winchester rifle, defendant fled and did not come back for some time. The defendant asked one of his witnesses, who had testified to Lovelace coming after the defendant, and as to defendant's flight, "if the defendant seemed afraid of Lovelace." The solicitor objected to the question, the court sustained the objection, and the defendant excepted. The defendant took the stand as a witness in his own behalf, and testified that he pitched the brick at the wagon; and his counsel asked him the following question: "What was your intention when you pitched that piece of brick at the wagon?" The solicitor objected to the question, the court sustained the objection, and the defendant excepted.

In the course of the charge given by the court of its own motion, it charged the jury: "If the act was calculated to take life, the killing was manslaughter in the first degree." To this part of the court's general charge the defendant excepted. The bill of exceptions then recites: "The defendant asked the court to charge the jury on the hypothesis that the killing was accidental. The court said in reply to the said request, 'That there was no evidence of such character.' To which remark of the court the defendant then and there excepted." The bill of exceptions also recites: "When the court had finished charging the jury, the defendant then and there excepted to the general charge, for the reason that, while the court instructed the jury upon the hypothesis that the testimony of the State's witnesses might be true, the court did not instruct the jury upon the hypothesis that the testimony of the defendant or the defendant's witnesses might be true."

The defendant excepted to the refusal of the court to give the following, among other written charges requested by him: (1.) "The fact that the defendant is charged by the grand jury with the commission of this crime is no evidence of his guilt; the finding of the indictment only gives permission to this court to inquire into his guilt; and, unless the evidence given from the stand satisfies the minds of the jury to a moral certainty that the defendant committed this crime intending to kill, the jury must acquit him." (6.) "It is the duty of the jury to give the defendant the benefit of every reasonable doubt which may arise in the consideration of the evidence in this case; and if, after a fair and full consideration of this evidence, the minds of the jury are left in a state of doubt and uncertainty as to whether the defendant intended to kill the deceased, or whether the killing was accidental, then the jury should give the defendant the benefit of such reasonable doubt, and acquit him." (22.) "If the jury is not satisfied beyond a reasonable doubt that, when the defendant threw the piece of brick, he threw it with malice, and intended to kill Henry Lovelace, they must acquit him of murder." (23.) "If the jury are not satisfied beyond a reasonable doubt that, when the defendant threw the piece of brick, he intended to kill Henry Lovelace, or that the act was one from which death or great bodily harm would ordinarily, or in the usual course of events, follow, they must acquit the defendant of manslaughter in the first degree." (26.) "The law in no case requires the greatest care that can be used. It only requires a reasonable precaution, such as is usually and ordinarily

[Lewis v. The State.]

taken in the like cases ; which has been by long experience found to answer the ends ; for such conduct shows that the accused is regardful of social duty, and is free from all manner of guilt."

The court gave a number of written charges requested by the defendant; among them, the following : (2.) "Every one charged with the commission of a crime is presumed to be innocent until his guilt is established ; and the evidence to induce his conviction should not be a mere preponderance of probabilities, but it should be so convincing as to lead the minds of the jury to the conclusion that the defendant cannot be guiltless." (10.) " 'That, unless the evidence against the prisoner should be such as to exclude, to a moral certainty, every supposition but that of his guilt of the offense imputed to him, they must find him not guilty." After these charges had been given, the solicitor read from the charges, and requested the court to instruct the jury as follows : (1.) " 'The evidence to induce his conviction should not be a mere preponderance of probabilities, but it should be so convincing as to lead the minds of the jury to the conclusion that the defendant cannot be guiltless.'—only means that they should be satisfied of his guilt beyond all reasonable doubt." (7.) " 'That unless the evidence against the prisoner should be such as to exclude, to a moral certainty, every hypothesis but that of his guilt of the offense imputed to him, they must find the defendant not guilty'— only means that they must be satisfied of the defendant's guilt beyond all reasonable doubt." The court gave these instructions, at the oral request of the solicitor ; and the defendant separately excepted to the giving of each of the explanatory charges.

J. T. ELLISON, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

McCLELLAN, J.—The State proved the flight of the defendant as tending to establish guilt. Defendant sought to rebut the inference afforded by the fact of flight by showing that flight was due to defendant's fear that Lovelace, the father of the deceased, would summarily avenge the homicide, and not a consciousness of guilt. It was of course competent to prove defendant's personal fear to explain his flight, but this could not be done by the testimony of a witness that, "the defendant seemed afraid of Lovelace," a mere "opinion of the witness,

based either on the conduct or declarations of the defendant himself, or else unsupported by fact at all."—*Poe v. State*, 87 Ala. 65; *McAdory v. State*, 59 Ala. 92; *Gassenheimer v. State*, 52 Ala. 313.

The proposed testimony of the defendant as to the intention with which he pitched the brick which inflicted the fatal wound was properly excluded. A witness can not testify to the uncommunicated intention with which he did an act.—*Wheeless v. Rhodes*, 70 Ala, 419 ; *Burke v. State*, 71 Ala. 377 ; *Whizenant v. State, Ib.*, 383 ; *Stewart v. State*, 78 Ala. 456 ; *Fonville v. State*, 91 Ala. 39 ; *Baldwin v. Walker, Ib.*, 428 ; *E. T., V. & G. R. R. Co. v. Davis, Ib.*, 615.

That part of the court's general charge to which the first exception was reserved is in effect, that if one intentionally does an act which is calculated to take life and death is produced by it, the homicide is manslaughter in the first degree. This is the law. An actual intention to take life is not an essential element in this offense or indeed in murder. The voluntary setting in motion or application of unlawful force, or the doing of an act greatly dangerous to the lives of others, whereby death ensues, will suffice to supply the legal elements of evil intent, however free the action may be from actual purpose to kill. These principles justify the charge given by the court and its refusal to give charges 1 and 22 requested by the defendant.—*Harrington v. State*, 83 Ala. 9; *Williams v. State*, 83 Ala. 16; *Hornsby v. State*, 10 So. Rep. 522; *Mitchell v. State*, 60 Ala. 29 ; *Washington v. State*, 60 Ala. 10; *Nutt v. State*, 63 Ala. 180 ; *Hampton v. State*, 45 Ala. 82; *McManus v. State*, 36 Ala. 285.

It was not controverted that the defendant intentionally threw, or "pitched," the brick which produced death, at the deceased. Whether he intended to kill deceased or not, that result is chargeable to his voluntary act; and not to misadventure. There being thus no testimony tending to show that the killing was "accidental," the court rightfully refused to instruct the jury on that hypothesis.—*Walker v. State*, 85 Ala. 7. Any charge in line with defendant's request in this connection would have been abstract, and, hence, even had such instruction been requested in writing, which it was not, should have been refused.—*Ruse v. State*, 90 Ala. 624 ; *Railroad Co. v. Watson*, 90 Ala. 41.

If it was apprehended that the defendant would be prejudiced by the failure of the presiding judge, to charge the jury on the hypothesis that defendant's evidence might be true," at least request should have been made that he so charge them. This omission, very clearly we think, afforded

no ground for an exception to the court's general charge as given. Whether such request should, if made, have been complied with, we need not decide. Possibly defendant should have asked special written charges covering the point, the court having charged the jury as to their duty in the event they found the fact in line with the tendencies of the State's evidence.

Charge 6 refused to defendant is manifestly distinguishable from the charge which this court held in *Elmore v. State*, 92 Ala. 51, should have been given. It is easily open to a construction which would subject it to the objections held fatal to a similar charge in the case of *A. G. S. R. R. Co. v. Hill*, 93 Ala. 514. Moreover this charge is, for reasons stated, in another connection, abstract, in that there is no evidence in that case which tends to show that the killing was accidental, in a legal sense, and it is misleading, in that the jury would naturally have been induced by it to the conclusion that the defendant could not be guilty unless he had the purpose to kill the deceased. It may be that "the law in no case requires the greatest care that can be used," as stated in charge 26, requested by the defendant, but in all cases, we apprehend it does require greater care than any phase of the evidence found in this record shows defendant to have exercised, much greater care than can possibly be implied from any method of heaving a brickbat at and against a small boy; and to have given this charge could have served no other end than to confuse and mislead the jury.

It was entirely competent and proper for the trial court to *explain* not to qualify, limit or modify, the written charges given for defendant in the manner shown by the record. *A. G. S. R. R. Co. v. Moody*, 92 Ala. 279; *Lowe v. State*, 88 Ala. 9; *Barnard v. State*, *Ib.*, 111; *McKleroy v. State*, 77 Ala. 95.

Charge 23 requested for the defendant is a correct exposition of the law as expounded in *Williams v. State*, 83 Ala. 10, and should have been given.

For the error committed in its refusal the judgment must be reversed; and the cause will be remanded.

Reversed and remanded.