[Parnell v. The State.]

# Parnell *r*. The State.

## *Indictment for Murder.*

1. *Indictment; when shown to be properly presented.*—Where a record discloses that a grand jury was composed of fifteen persons and that it returned into open court certain indictments upon each of which was entered "a true bill," signed by the foreman of the grand jury, which were ordered to be filed in open court in the presence of the grand jury, and there were indorsements on each of the indictments "a true bill," signed by the foreman, and that it was filed in open court on a certain date, it is sufficiently shown that such indictments were properly returned and presented to the court as required by statute (Code, §§ 5022, 5029).

2. *Organization of jury; sufficiency of judgment of conviction in criminal case.*—It is no objection to a judgment of conviction in a capital case, that it.fails to show the order of the court to the sheriff to summon the special jurors drawn for the trial of the defendant; the statute (Code, § 5004) not requiring a judgment entry to disclose such order.

3. *Homicide; organization of jury.*—In the drawing of juries for the trial of a defendant charged with a capital offense, it is not necessary that the judge, when drawing from the jury box the slips of paper on which the names of the jurors were written, should call aloud the names of the persons as they are drawn from the box (Code, § 5009); and the statute is sufficiently complied with if the judge publicly draws from the box the slips of paper on which the names of the jurors are written and hands them to the clerk without calling aloud the names of the persons thereon, and directs the clerk to allow the defendant and his attorney to see the names and the slips on which they are written at any time, and to make a list of them at once and hand it to the defendant or his attorney.

4. *Witness; can not be impeached by proof of immaterial fact.*—It is not competent for the purpose of laying a predicate, to impeach a witness, to ask him about matters entirely immaterial and wholly irrelevant to any issue in the case.

5. *Same; same; charge of court as to impeachment.*—Where a court in its general charge, as to the impeachment of a witness, instructs the jury how they were to consider such witness' testimony, and simply explained to the jury their duty in considering contradictory statements of the witness, if they found he had made them, such portion of the court's

general charge is not subject to objection upon the ground
that it was a charge upon the effect of the evidence.

6. *Indictment for murder; when error in instruction as to mur-
der in the first degree without injury.*—Where a defendant is
charged under an indictment for murder in the first de-
gree and is convicted of murder in the second degree, error
committed by the court in defining murder in the first degree
and in announcing the law in respect thereto, is error with-
out injury to the defendant, and will not, under the statute,
(Code, § 4333) work a reversal of the judgment of convic-
tion.

7. *Homicide; charge of court to jury.*—On a trial under an indict-
ment for murder, where the court, as a predicate for its
instruction as to the law of manslaughter, recalls their at-
tention to what he had previously charged as to self-defense
by saying "I have instructed you, if you find the defendant
was not free from fault, or that there was no impending
necessity for him to strike the blow, or that he could have
withdrawn, that he can not be excused upon the ground of
self-defense"—such statement, though not as full and ac-
curate as it might have been, contains no reversible error;
it being intended merely as reference to and as being what he
had substantially previously charged.

8. *Charge as to manslaughter.*—On a trial under an indictment
for murder, a charge as to manslaughter which instructs the
jury that "manslaughter in the first degree is where a man
voluntarily, freely and of his own accord, puts in force against
a person such an instrumentality that by the manner of its
use and character of the instrument used, would ordinarily
produce death or great bodily harm without just cause or
excuse therefor; and it is immaterial whether there was a
positive intention to kill at the time the blow was struck,"
is not prejudicial to the defendant, and the giving of such
a charge, though subject to criticism as being too favorable
to defendant, will not work a reversal of the judgment.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

The appellant in this case, William Parnell, was in-
dicted for murder in the first degree for the killing of
one Henry Starling, was convicted of murder in the sec-
ond degree and sentenced to ten years in the peniten-
tiary.

The organization of the grand jury and the return by
the grand jury of indictments and the indorsement upon
the indictment in the present case are shown in the

opinion. The drawing of the special venire and the orders of the court in reference thereto, as set forth in the judgment entry, are in words and figures as follows: "And forty is fixed as the number of special jurors to be drawn in this case, and the court ordered the legal jury box of Pike county to be brought into open court, and said order being obeyed and the box being well shaken the court in open court in accordance with the law drew therefrom the names of forty persons. And the court ordered the sheriff to serve said defendant with a copy of the list of these names of said special jurors so drawn and also with a list of the names of the jurors summoned and drawn for the second week of this court, the said day for trial being a day of the second week, and also directed and ordered the sheriff to serve said defendant with a copy of the indictment in this case. Said sheriff was ordered by the court to serve said copy of the lists of jurors and of the indictment on defendant, at least one entire day before said day set for trial. And defendant with his counsel was present in open court during all the foregoing proceedings."

On the trial of the case, the defendant moved to quash the indictment on the following grounds: "1st. That said indictment fails to show that it was presented to the presiding judge by the foreman of the grand jury in the presence of eleven other grand jurors. 2d. That said indictment fails to show how many of the grand jurors were present when the said indictment was returned into open court if said indictment was, in fact, ever returned into open court. 3d. Because said indictment fails to show that it was filed in open court in the presence of the grand jury. 4th. Because said indictment fails to show that it was returned into open court in the presence of at least eleven grand jurors." The motion was overruled, and the defendant duly excepted. Thereupon the defendant demurred to the indictment upon the same grounds as the motion to quash was based. The court overruled this demurred, and the defendant duly excepted.

In reference to the organization of the petit jury for the trial of the defendant, the bill of exceptions recites

as follows: "The defendant was then arraigned and the presiding judge ordered the sheriff to bring into open court the jury box preparatory to drawing the jurors for the trial of the defendant. The court then proceeded to draw from the jury box small slips of paper on which the names were written and these the presiding judge handed to the clerk without calling out loud the name of the person thereon, the defendant then requested the presiding judge to call out the name aloud as the jurors were drawn, which the presiding judge failed and refused to do, and to this failure and refusal to call aloud the names of the jurors as they were drawn the defendant did then and there duly and legally except. The presiding judge when the request was interposed, informed the defendant and his attorneys that they could see the names any time if they wished; and directed the clerk to allow them to see the names at any time, and the slip on which they were written; and directed the clerk to make a list of them at once and hand it to the defendant or his attorneys; and instructed the clerk to carefully preserve the slips till day for trial, for comparison on that day."

The evidence for the State tended to show that the defendant killed Henry Starling, a youth of 17 or 18 years of age, by striking him on the head with the butt end of a buggy whip, and that the circumstances attending the killing were as follows: While the defendant was riding in a buggy with another person along a street in the city of Troy, his companion said to the defendant: "There is the boy now," pointing towards Henry Starling; that thereupon the defendant stopped his buggy and called Henry Starling to him and said to him that he understood that he, Starling, had stated that the defendant had "told a d—— lie." That thereupon the deceased made a reply and the defendant jumped from his buggy and took the whip out of the whip-stand and, using both hands, struck the said Starling over the left ear with the butt end of said whip, which blow resulted in his death. The evidence for the State further tended to show that the whip with which the deceased was struck was an unusually heavy one and that at the time the defendant struck the deceased

the latter was standing with his hands in his pockets, without making any demonstration whatever towards the defendant.

The evidence for the defendant tended to show that upon the defendant's calling the deceased to his buggy and asking him as to whether or not he had said that he was a d—— liar, the deceased replied that the defendant had "told a d—— l'e," and at the same time stepped backwards and made a motion with his hand towards his hip pocket, as if he was going to draw a pistol; and that at that time the defendant, who was then standing on the ground, took the whip from the whip-stand and struck the deceased a blow which resulted in his death.

Several of the witnesses for the State testified that at the time the deceased was struck he had no weapon of any kind upon him.

Tom Bowers was examined as a witness for the State and testified that the defendant told him that he, the defendant, had no right to kill Henry Starling. This witness further testified that he assisted in undressing Henry Starling after the defendant had struck him and aided a brother of the defendant in taking things out of Henry Starling's pockets and that he did not see or find any pistol in the pockets of the deceased at that time. The defendant then asked the witness the following question: "Did you on that day loan your pistol to deceased, and did you tell Mr. Sydney Sims to-day, at his store in Troy, that you had a 32 pearl handled Smith and Wesson pistol and had loaned it out?" The State objected to this question on the ground that it called for immaterial, irrelevant and illegal evidence. The court sustained this objection, and to this ruling the defendant duly excepted. During the subsequent trial of the cause witness Tom Bowers was again introduced as a witness and the defendant sought to lay a predicate for his impeachment by asking him in reference to statements which it was claimed he made in Sydney Sims' store in reference to deceased having a pistol. Upon objection interposed by the State the court refused to allow said question, and to this ruling the defendant duly excepted.

Upon cross-examination by the defendant of one Jim Beck, a witness for the State, and after he had testified to incriminating facts against the defendant, the defendand asked him if in conversation with Gussie and Charlie Owen he did not tell them at a designated time and place "that if Parnell did not hit him (deceased) a dead lick, Starling would have shot him with a pistol?" The witness testified that he did not. In the examination of Gussie and Charlie Owen as witnesses for the defendant they testified that at the time and place referred to in the question asked the witness Jim Beck, said witness Beck did make the said statement to them.

In the court's general charge to the jury he instructed them as follows, in reference to the impeachment of the witness Beck: "The force and effect of that testimony is to show that this man Beck has told things out of court different from in court, and that therefore it becomes a matter for your consideration when weighing his testimony how much credit you will give to a witness who states things in that way. Now that is the effect and influence it should have in this case. It is not, independent of Starling having a pistol, evidence, nor can it be used as independent testimony as to whether Starling had a weapon or came to town with a weapon, and it is not evidence that he did or did not. (2.) The question is, what it goes to the credibility of Beck's testimony. What credit will you give a witness who says one thing in court and another out. The fact whether or not he did make such a statement brings you down to consider the testimony of this Mr. Owens. Did he, Beck, make that statement? It is a question of fact for you to decide, and when you have found that he made contradictory statements, if so, you are to decide what his testimony is worth. How far you will believe or not believe him." To this portion of the court's charge the defendant duly and separately excepted. Under the opinion in this case it is unnecessary to set out the portion of the court's general charge defining murder in the first degree, to which the defendant separately excepted. The defendant duly and separately excepted to the statement made by the court in its general charge in reference to what was necessary to constitute self-defense, which is copied in the opinion

of the court. In this connection the court further instructed the jury in its general charge as follows: "Now manslaughter in the first degree is where a man voluntarily, freely and of his own accord, puts in force against a person such an instrumentality that by the manner of its use and character of the instrument used would ordinarily produce death or great bodily harm without just cause or excuse therefor. It is immaterial whether it is shown whether there was a positive intention to kill at the time the blow was struck."

Under the opinion on the present appeal it is unnecessary to set out in detail the many written charges requested by the defendant which were refused by the court.

TERRY RICHARDSON and J. F. STALLINGS, for appellant.—The judgment of the court fails to show the order of the court to the sheriff to summons the special jurors drawn for the trial of the defendant.—*Morrison v. State,* 84 Ala. 409; *Posey v. State,* 73 Ala. 493; *Sylvester v. State,* 71 Ala. 17; *Spicer v. State,* 69 Ala. 162.

The motion to quash the indictment and the demurrer thereto should have been sustained. The indictment fails to show by indorsement upon its face the number of grand jurors voting for the same, as required by the statute. The court improperly drew the jurors to constitute the jury to try the defendant. The jury was not publicly drawn as required by statute.—Code, § 5004.

The court erred in the portions of the charge to which the defendant separately excepted.—*Belisle v. Creek,* 49 Ala. 98; *Shorter v. State,* 57 Ala. 253.

CHAS. G. BROWN, Attorney-General, for the State. It was not necessary for the judgment entry to show the order of the court to the sheriff to summon the several jurors drawn for the trial of the defendant. Such order need not appear of record.—*Washington v. State,* 81 Ala. 35; *Hurd v. State,* 116 Ala. 440.

The motion to quash and the demurrer thereto are totally without merit.—*McRee v. State,* 62 Ala. 32; *Stanley v. State,* 88 Ala. 154, reaffirming *Wesley v. State,* 52 Ala. 182.

The court did not err in its rulings upon the evidence. *Brown v. State*, 74 Ala. 42; *Rufus v. State*, 117 Ala. 133; *Johnston v. State*, 69 Ala. 253; *Page v. State*, 69 Ala. 230; *Zaner v. State*, 90 Ala. 651; *Jackson v. State*, 81 Ala. 33; *Rutledge v. State*, 88 Ala. 85.

Even if there was error in the court's defining murder in the first degree, it was error without injury and will not work a reversal of the judgment.—*Winter v. State*, 123 Ala. 1; *McNeezer v. State*, 63 Ala. 169; *Lewis v. State*, 96 Ala. 6; *Collier v. State*, 69 Ala. 247.

HARALSON, J.—The evidence discloses that the grand jury was composed of fifteen persons, and that the "grand jury returned into open court, certain indictments upon each of which was entered 'A true Bill,' signed by the foreman of the grand jury, which were ordered to be filed in open court in the presence of the grand jury," etc. The indictment in this case is indorsed, "A true bill. N. J. E. Walker, Foreman Grand Jury. Filed in open court, this July 25th, 1900." It thus appears, that the indictment shows by its indorsements, that it was presented in open court to the presiding judge, by the foreman of the grand jury in the presence of eleven other jurors besides the foreman. It required 15 to constitute a legal grand jury, and the concurrence of at least 12 of their number to find an indictment.—Code, §§ 5022, 5039. When the record shows that the grand jury returned the indictment into open court, it appears that 12, if not the entire body of the grand jury, performed this service.

To the objection, that "the judgment of the court fails to show the order of the court to the sheriff to summon the special jurors drawn for the trial of the defendant," it is sufficient to say, that section 5004 of the Code does not require that the judgment entry shall disclose such an order. Its requirement in this respect is, that "the presiding judge shall then and there publicly draw therefrom [the jury box referred to] not less than 25 nor more than 50 of said names for each capital case, a list of which shall be immediately made out by the clerk of said court and an order issued to the sheriff to summon the same upon the day set for trial,"

etc. The judgment entry shows a strict compliance by the judge with this statute in the discharge of his duty. It also shows that the judge performed this duty by publicly drawing the jury.

The bill of exceptions states, that "the presiding judge [on the arraignment of the defendant] ordered the sheriff to bring into open court the jury box, preparatory to drawing the jurors for the trial of the defendant." The judge then drew from the box the slips of paper on which the names of the jurors were written, and handed them to the clerk without calling aloud the names of the persons thereon. The defendant requested the judge to call aloud their names, as the jurors were drawn, which he refused to do, and to this refusal the defendant excepted. When this request was made, the judge informed the defendant and his attorneys, that they could see the names at any time, if they wished, and directed the clerk to allow them to see the names and the slips on which they were written, at any time, and directed the clerk to make a list of them at once, and hand it to the defendant or his attorneys, and to carefully preserve the slips till the day of trial, for comparison on that day.

The statute does not require the judge to call out the names of the jurors drawn from the box, and he seems to have complied substantially with its provisions. There was no secrecy about the procedure, but it was all done publicly and in a manner not in anywise to prejudice the defendant.

Tom Bowers was examined for the State and testified that he did not see any pistol on deceased after he was killed, and also to incriminating facts against defendant. The bill of exceptions recites, "The defendant then asked the following questions, to lay a predicate for the impeachment of the witness: 'Did you on that day loan your pistol to deceased; and did you tell Mr. Sidney Sims, to-day, at his store in Troy, that you had a 32 pearl handle Smith & Wesson pistol, and had loaned it out?'" and again, if he had not told Sims, at the same time and place, that he had loaned it to deceased. The State objected on the score of immateriality and the court properly sustained the objection. It was

not competent to contradict the witness on an immaterial issue. What we here say, applies with equal force to the after attempt to lay a predicate to impeach the witness later in the course of the trial.

What the court in its general charge, charged the jury, as to the impeachment of the witness Beck, and how the jury were to consider his testimony, was not subject to the exception taken to it in argument, that it was a charge on the effect of the evidence. It was simply to explain to the jury their duty in considering contradictory statements of the witness, if they found he had made them.

The defendant was tried on an indictment which charged murder in the first degree. He was convicted of murder in the second degree. If the court committed error in defining murder in the first degree, which it is unnecessary to decide, it would seem that the charge involved no injury to the defendant.—Code, § 4333; *Winter v. The State*, 123 Ala. 1.

The court in its general charge, stated as a predicate for its charge on manslaughter, what in substance he had already charged them as to self-defense. What that former charge was, is not set out; but the court said, "I have instructed you, if you find the defendant was not free from fault, or that there was no impending necessity for him to strike the blow, or that he could have withdrawn, that he cannot be excused upon the ground of self-defense." What the court here said was intended as a reference to and being substantially what he had previously charged, and not as a literal quotation thereof. It was designed simply to recall their attention to what he had previously charged. For the purposes for which the statement was made, if not as full and accurate as it might have been made, it contained no reversible error.

So it was in what followed, as to the charge on manslaughter. The court said, "Let me define to you manslaughter in the first degree a little more," and added, "Now manslaughter in the first degree is where a man voluntarily, freely and of his own accord, puts in force against a person such an instrumentality that by the manner of its use and character of the instrument used,

[Ford v. The State.]

would ordinarily produce death or great bodily harm, without just cause or excuse therefor. It is immaterial whether there was a positive intention to kill at the time the blow was struck." This definition of manslaughter in the first degree, may be subject to criticism, but it was not erroneous as to the defendant. If it contained any fault, it was too favorable to the defendant.—*Lewis v. The State*, 96 Ala. 6.

The case was not voluminous in its facts, and involved only plain, well settled and often repeated principles of law. The defendant,—judging from their numbering and lettering,—requested considerably over a hundred written charges, a number of which were given, and others refused. We have examined those refused, and find that they are either wholly bad or confused and misleading, abstract, argumentative, or otherwise faulty. It would require a lengthy opinion to criticise them and point out their defects, and would subserve no good purpose to do so.

Finding no reversible error in the record, the judgment and sentence of the lower court must be affirmed.

Affirmed.