# Howard *v.* The State.

## *Murder.*

(Decided June 30, 1909.   Rehearing denied Dec. 16, 1909.—50 South. 954.)

1  *Criminal Law; Change of Venue; Evidence.*—The evidence in this case stated and examined and held not to require a granting of the motion for a change of venue.

2. *Evidence; Hearsey; Rumor.*—A request to a witness to state whether or not she had heard of somebody being stripped and whipped because they refused to say that they knew anything about the murder in question, called for evidence of a mere rumor, and was purely hearsay.

3. *Charge of Court; Reasonable Doubt.*—Where the prosecution was for murder, and the state relied on the corroborated testimony of an accomplice, charges predicating an acquittal on a reasonable doubt as to whether accused and others conspired to kill deceased on a certain night at the house of one of the conspirators were properly refused, especially where there was other corroborative evidence sufficient to support a conviction.

4. *Same.*—A charge asserting that the defendant was entitled to an acquittal if any one juror had a reasonable doubt of his guilt, was bad.

5. *Charge of Court; Corroboration.*—A charge asserting that as a matter of law, there was no evidence corroborating the testimony of the accomplice as required by law, was properly refused.

[Howard v. The State.]

6. *Same.*—A charge asserting that the law would not permit th ·
conviction of a defendant charged with a felony on the uncorrobo-
rated evidence of an accomplice; that corroborated evidence is such
as tends to connect the defendant with the commission of an offense,
and if it merely showed the commission of the offense or the
circumstances thereof, it is not sufficient; that the only evidence
introduced as corroborative evidence was the evidence of the con-
spiracy. alleged to have been formed among the defendant and
others to kill deceased, and unless the jury was satisfied from the
evidence, beyond a reasonable doubt, independent of anything
testified to by the accomplice. that defendant, the accomplice, and
others did form a conspiracy to kill deceased, they must acquit, was
not erroneously refused as the charge failed in its entirety to correct-
ly state the necessity and sufficiency of corroborative evidence to
support a conviction for felony.

7. *New Trial; Criminal Case.*—Neither motions for new trials
nor the rullings thereon, in criminal cases, can be reviewed by the
Supreme Court on appeal.

8. *Criminal Law; Arraignment; Necessity for.*—A conviction can-
not be sustained on appeal unless there has been an arraignment
of the defendant, and a plea.

9. *Same.*—The prevailing practice in an arraignment is to call
a defendant ·to the bar of the court to read and explain the indict-
ment to him, and require his plea thereto.

10. *Appeal and Error; Record; Recital.*—The recitals of the record
govern an appeal, and where the record proper shows an arraign-
ment and plea, and the bill of exception differs from the record,
the recitals of the record will control.

APPEAL from Hale Circuit Court.

Heard before Hon. B. M. MILLER.

Ed Howard was convicted of murder and he appeals:
Affirmed.

The facts sufficiently appear in the opinion of the
court. The following charges were refused to the de-
fendant: (2) "The court charges the jury that the only
evidence introduced by the state to corroborate the tes-
timony of Charley Taylor is evidence tending to show
that defendant, Charley Taylor, and Shad Williams
agreed to kill R. W. Drake at Shad Williams' house, and
if they have a reasonable doubt as to the truth or falsity
of that testimony they must acquit the defendant." (3)
"The court charges the jury that if they have a reason-
able doubt as to the truth or falsity of the evidence of
the women, Etta Ward and Emma Williams, who testi-

fied in this case, then they must acquit the defendant."
(4) General affirmative charge. (5) "Unless the jury
believe from the evidence beyond a reasonable doubt that
before the murder of R. W. Drake the defendant, Ed
Howard, and Joe McDaniel and Charley agreed in the
house of Shad Williams, on Monday before the murder
of R. W. Drake, to kill R. W. Drake, then the jury must
acquit the defendant." (6) "The court charges the jury
that, unless each of them is satisfied of the defendant's
guilt beyond a reasonable doubt, they must acquit the
defendant." (7) "The court charges the jury that the
state has failed to corroborate the testimony of Charley
Taylor in the manner required by law, and that they
must acquit the defendant." (8) "The court charges the
jury that the law will not permit the conviction of the
defendant charged with a felony upon the uncorrobora-
ted evidence of an accomplice, and that corroborating
evidence is such evidence as tends to connect the defend-
ant with the commission of the offense, and if it merely
shows the commission of the offense, or the circum-
stances thereof, it is not sufficient; and the court further
charges the jury that the only evidence which has been
introduced by the state as corroborative of the evidence
of Charley Taylor, the accomplice, is the evidence of the
conspiracy alleged to have been formed between the de-
fendant, Charley Taylor, and others, to murder R. W.
Drake, and unless the jury is satisfied from the evidence
beyond a reasonable doubt, independent of anything that
has been testified to by Charley Taylor, that the defend-
ant, Charley Taylor, and others, did form a conspiracy
to murder R. W. Drake, then they must acquit the de-
fendant."

A. M. TUNSTALL and E. S. JACK, for appellant.—The
court should have granted the motion for a change of

venue.—*Thompson v. The State,* 117 Ala. 67.    Charges
1 and 4 should have been given.—*Jackson v. The State,*
91 Ala. 55; *Childs v. The State,* 97 Ala. 50.    Charges 2
and 3 should have been given.—*Parker v. The State,* 45
South. 248.    Charge 8 should have been given.—Sec.
7897, Code 1907, and authorities cited.

ALEXANDER M. GARBER, Attorney General, and THOM-
AS D. SANFORD, for the State.—The court properly de
nied the application for a change of venire.—*Hawse v.
The State,* 88 Ala. 37.    There is no merit in the excep-
tions to the evidence.    Charges 2 and 3 were properly re-
fused.—*Parker v. The State,* 45 South. 248; *Bonner v.
The State,* 107 Ala. 97.    On these authorities and on the
authority of *Berney v. The State,* 87 Ala. 80.    Charges 1,
4, 5 and 8 were properly refused.    Charge 6 was proper-
ly refused.—*Davis v. The State,* 131 Ala. 10.    This court
will not review the action of the trial court on motion
for a new trial in the criminal court.—*Frederick v. The
State,* 39 South. 915.

MAYFIELD, J.—The defendant was indicted and
convicted of murder in the first degree, and the death
sentence was imposed by the jury.    The material facts,
as stated by counsel for appellant, and necessary to an
understanding of the case and of the questions raised
on appeal, are as follows:

On the night of November 24, 1908, R. W. Drake,
while asleep in his bed at his home, in Laneville, Hale
county, Ala., was hit on the head with some heavy instru-
ment and killed.    His adjacent store was burglarized,
and the store and residence set on fire; the fire being
extinguished before gaining much headway. On the next
day one Charley Taylor, suspected of the crime, was ap-
prehended, and confessed his guilt, implicating Ed How-

ard and Shad Williams as his accomplices in the crime. A day or two later he implicated Joe McDaniels as one of the accomplices. All four of the parties were negroes, and the deceased, R. W. Drake, was a white man, formerly sheriff of Hale county. Shad Williams, Ed Howard, Joe McDaniels, and Charley Taylor were thereupon arrested and confined in the Hale county jail.

On the 30th day of November, the judge of the Fourth circuit, Hon. B. M. Miller, made an order for a special term of the court to be begun on the said 30th day of November (see pages 1-3 of the record), and on that day proceeded to draw a grand jury, and drew a petit jury. On December 2d the grand jury was duly impaneled and organized, and on the same day said grand jury returned an indictment, charging this defendant, Ed Howard, with murder in the first degree (see pages 6-13 of record). On the same day, this appellant was brought into court, and being without counsel, and without the ability to employ counsel, the court appointed A. M. Tunstall and E. S. Jack to represent him. The court thereupon set the 5th day of December to try this appellant on said indictment.

On the 5th day of December, the said case against this appellant was called for trial, and said appellant moved for a change of venue (see page 20 et seq. of record). In this sworn application it is set out that Mr. Drake, the deceased, was a white man of much prominence and popularity in the county; that the appellant was a negro boy; that Charley Taylor had confessed his guilt, and implicated the appellant; that articles assuming the guilt of this appellant and that of the others accused by Charley Taylor, appeared in the Greensboro newspapers, particularly the Watchman, a paper edited by the chairman of the county Democratic executive committee, a man in whom the people of Hale county

had great confidence, and whose views, as expressed in said paper, extracts from which are made a part of the motion, assuming the guilt of this appellant, produced a strong conviction upon the public mind that this appellant was in fact guilty; that the jurors who were summoned as venire in this case had been present in the courthouse during the trial and at the conviction of Shad Williams and Joe McDaniels, also charged with the murder of Mr. Drake; that much feeling was manifested in said courtroom when the jury imposed only a life sentence on said Shad Williams, and that so marked was the public disapproval of anything less than a death verdict that after the verdict the sheriff threw an armed guard around the jail to prevent a lynching of Shad Williams and others charged with the murder of R. W. Drake; that, shortly after the arrest of this appellant and the others charged with the said murder, the feeling in Hale county against said parties was so strong that under the order of the Governor of Alabama the said parties so charged with or suspected of said murder were carried by special train, on the night of November 28th, to Birmingham, to prevent any attempt to lynch them, and were kept in the jail at Birmingham until December 2d, the day they were arraigned on said indictment; and that the murder of Mr. Drake aroused the deepest resentment and created the greatest excitement among the people of Hale county. On the hearing of said motion, the allegations of which were duly verified by said appellant, the state offered a joint ex parte affidavit of nine men (see page 37 of record), which set out that the parties signing the same were acquainted with the public sentiment of Hale county, that the defendant could get a fair trial, that there had not been any danger of mob violence, and that there had been "no change of sentiment against this defendant" since

the Shad Williams trial. The court overruled the motion, and the appellant duly excepted.

On the trial of the case the state examined Turner Cash, Robert Campbell, E. E. Gewin, Charley Taylor, Etta Ward, Emma Williams, and Pick Bird. The testimony of none of these witnesses, except Charley Taylor, Emma Williams, and Etta Ward, tended to implicate appellant. Charley Taylor swore positively that he, Shad Williams, Joe McDaniels, and appellant plotted and accomplished the murder of Mr. Drake. The woman Emma Williams, the wife of one of the defendants, Shad Williams, testified that she heard a conversation between Charley Taylor, Joe McDaniels, Shad Williams, and appellant, in her house, on the Monday night before Mr. Drake was killed, in which conversation they all agreed to kill Mr. Drake. The woman Etta Ward testified that she was walking from the field, in the path that passed by Shad Williams' house, and while passing there she heard a conversation between Charley Taylor, Shad Williams, and appellant, in which they agreed to kill Mr. Drake. This conversation was a few days before Mr. Drake was killed. She further testified that she, a few days before Mr. Drake was killed, saw Charley Taylor, Shad Williams, Joe McDaniels, and appellant at the well in a conversation; that as she walked up they all stopped talking. The defendant, through his counsel, asked the witness Etta Ward the following question: "Haven't you heard of somebody down there being stripped and whipped because she had refused to say that she knew anything about the murder?" The state objected to this question, the court sustained the objection, and the defendant excepted. Defendant stated to the court that he expected to prove that the witness had heard that a woman had been stripped and whipped because she had refused to testify

[Howard v. The State.]

that she knew anything about the killing of Mr. Drake (see page 75 of record). This was all of the testimony introduced by the state. The defendant introduced a number of witnesses, the testimony of none of whom is material for an adjudication of the questions involved in this appeal.

Had all the facts stated in the motion for a new trial been conceded or confessed, it would, indeed, have been a strong showing for a change of venue; but all the facts necessary to entitle the appellant to a change were not confessed, but were denied, and affidavits were introduced on the hearing of the motion denying the existence of the facts material to entitle the defendant to a change of venue. There was no proof offered in support of the motion, other than the affidavit of the defendant. It was shown that he had been in jail nearly all the while since the commission of the offense, and hence had very little opportunity to know the condition of public sentiment for or against him. It is natural that public indignation should be aroused by the commission of such a crime as is conceded to have been perpetrated in this instance; but it is not shown that it was so aroused against this defendant individually, or so aroused, or so prejudiced, as to prevent a fair trial. While it is conceded that public indignation was aroused, and that there were rumors of mob violence, the very evidence introduced by the defendant disproves the rumor of a mob and of all violence. The clipping from the county paper, introduced by the defendant in support of his motion, is headed, "Rumor of a Mob—False Alarm," while the body of the notice shows that the rumor was false, that there was in fact no such danger, and no such public excitement, or anger as to justify any apprehension of violence; that the defendants were to be returned to the county, and that no attempt had been made to do

or offer them any violence, but that everything was orderly. The affidavits of the nine citizens, offered by the state, did contain statements of facts, and that the affiants knew the facts to be as stated; and if these facts were true the defendant was not entitled to a change of venue. Surely these facts as testified to by nine disinterested witnesses were entitled to as much weight as that of the defendant alone, who was vitally interested, and who could not know some of the necessary facts stated in his motion. We, therefore, conclude that there was no error in denying the change of venue.

The question propounded to the witness Etta Ward called for purely hearsay evidence, a mere rumor, and was properly disallowed.

There was no error in refusing any of the charges refused to the defendant. Charge 1 was the general affirmative charge for the defendant, and was, of course, properly refused.

Charge 2, 3, 5, and 8 predicated an acquittal upon a reasonable doubt as to whether the accused and others conspired to kill deceased on a certain night at the house of Shad Williams. There was other evidence than this to corroborate the evidence of the accomplice, and hence evidence sufficient to support a conviction; this being the only theory on which these charges could be correct.

Charge 6 required an acquittal if any one juror had a reasonable doubt of guilt, and was on this account bad.

Charge 7 required the court to charge, as matter of law, that there was no corroborative evidence, as required by law, and was for this reason properly refused.

Charge 8 is not a correct statement, in its entirety, as to the necessity and sufficiency of corroborative evi-

dence of an accomplice to support a conviction of a felony.

Motions for new trials, or rulings thereon, in criminal cases, cannot be reviewed by this court on appeal.

If there had been no arraignment, and no plea of guilty interposed by the defendant, of course, it would be fatal on appeal. But the record proper shows the arraignment, shows that the defendant pleaded not guilty; in fact, the record proper shows all that is necessary to support the conviction. This is matter that must be shown by the record proper, and not by the bill of exceptions; hence, if the recitals of the record proper and those of the bill of exceptions differ as to this matter, the recitals of the record proper must control. If there was in fact no arraignment, and no plea interposed by or for the defendant, the recitals of the record proper as to this effect should have been corrected by appropriate proceedings. These necessary and proper recitals in the record proper cannot be disregarded on appeal by recitals in the bill of exceptions.

An arraignment at English common law was much more formal than with us now. Under the former, Lord Hale says: "An arraignment consists of three things: First, the calling of the prisoner at the bar by his name and commanding him to hold up his right hand, which, though it may seem a trifling circumstance, yet it is of importance, for, by holding up his hand, constat de persona indictati, and he owns himself to be of that name; second, reading the indictment distinctly to him in English, that he may understand the charge; third, demanding of him whether he be guilty or not guilty, and if he pleads not guilty then the clerk joins issue with him cul. prist, and enters the prisoner's plea, then demands how he will be tried. The common answer is, 'By God and the country,' and thereupon the clerk enters po. se., and prays to God to send him a good deliverance."

[Howard v. The State.]

With us, however, it is nothing more than calling the accused to the bar of the court, and reading or explaining the indictment to him, and demanding his plea. Its only purpose is to obtain from the accused his answer or plea to the indictment—*Crain v. United States,* 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097; *Early v. State,* 1 Tex. App. 248, 28 Am. Rep 409. Our statutes (section 7565 of the Code of 1907) directs that if the defendant on arraignment refuses or neglects to plead, or stands mute, the court must cause the plea of not guilty to be entered for him. Under our practice and statutes, one charged of a capital offense is required to be arraigned, and his plea to be interposed, at least one entire day before the day of trial, so that if may be determined whether or not he is entitled to a special venire for his trial. If on arraignment, he pleads "guilty," he is not entitled to the special venire; if he pleads "not guilty," he is, and this special venire, together with a copy of the indictment, must be served upon him or upon his counsel one entire day before the trial.—Code, §§ 7566, 7840.

The record proper in this case affirmatively shows this was done; but it is insisted that the indictment was not read to the accused at the time the trial was begun, that no plea was then interposed by the defendant, and no issue was joined thereon. It is not necessary that there should be two arraignments for one trial. The record affirmatively shows all that was necessary as to the arraignment before drawing the special venire for the trial.

Finding no error, the judgment must be affirmed.

Affirmed.

Dowdell, C. J., and Simpson and Denson, JJ., concur.

[Griffin v. The State.]

IN  RESPONSE  TO  THE  APPLICATION  FOR  A  REHEARING  IN
THIS  CASE.

PER  CURIAM.—There is evidence in this record, tending to connect the defendant with the commission of the crime, other than that of the witnesses hypothesized in the charges complained of, which was not the fact in the record of *McDaniel's Case,* 162 Ala. 251, 50 South. 324, which is referred to and insisted on by counsel.

