(81 South. 820)

JOHNSON v. STATE. (6 Div. 800.)

(Supreme Court of Alabama. April 10, 1919.)

1. JURY &#9882;&#61;&#61;107, 108 — OPINION — CAPITAL PUNISHMENT — CIRCUMSTANTIAL EVIDENCE.

In view of Gen. Acts 1909, p. 317, § 32, and Code 1907, § 7278, court, in prosecution for murder in the first degree, properly excused jurors having fixed opinion against capital punishment or conviction on circumstantial evidence.

2. HOMICIDE &#9882;&#61;&#61;174(8) — ADMISSIBILITY OF EVIDENCE—STATEMENTS BY DEFENDANT.

In prosecution for murder, testimony that, after the shooting, defendant had said that if he was to kill anybody he would go home and kill his wife, was admissible, being a declaration against interest, and tending to illustrate further testimony of such witness that thereafter he did not see defendant until he had been arrested, after having left the state.

3. HOMICIDE &#9882;&#61;&#61;171(5) — EVIDENCE — STATEMENT BY DECEASED.

In a homicide prosecution, statement of deceased that there was "too much shooting out here" was incompetent evidence of the fact that many shots were fired at time of murder, where statement was not made in presence of defendant.

4. WITNESSES &#9882;&#61;&#61;337(2, 3) — TESTIMONY OF DEFENDANT—CHARACTER—VERACITY.

When a defendant testifies in his own behalf, he puts his character for truth and veracity in issue, and may thereafter he impeached for truth and veracity as a witness by evidence tending to show his general bad character before time of crime, and also reputation as to truth and veracity in his neighborhood to time of trial.

5. HOMICIDE &#9882;&#61;&#61;9 — INTENT — FIRST DEGREE MURDER.

In homicide prosecution, instruction that if the shooting was an act greatly dangerous to the lives of persons present, and evidencing a depraved mind, regardless of human life, although without any preconceived purpose to deprive deceased of life, defendant was guilty of murder in the first degree, was proper, under Code 1907, § 7084.

6. CRIMINAL LAW &#9882;&#61;&#61;829(21)—FIRST DEGREE MURDER — REQUEST COVERED BY INSTRUCTIONS.

In a homicide prosecution, where court charged that defendant was guilty of first degree murder if shooting had been an act greatly dangerous to lives of persons present and evidencing a depraved mind, regardless of human life, although without any preconceived purpose to kill deceased, the court properly refused to charge that defendant could not be convicted of murder in the first degree, unless the shooting was with premeditation and malice aforethought.

Appeal from Circuit Court, Lamar County; R. I. Jones, Judge.

---

&#9882;&#61;&#61;For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Wes Johnson was convicted of murder in the first degree, and he appeals. Affirmed.

The following charges were refused the defendant:

(b) Unless you believe beyond all reasonable doubt that the defendant willfully, deliberately, maliciously, with premeditation, shot Effie Myatt with intent to kill her, you cannot find the defendant guilty of murder in the first degree.

(c) You cannot find the defendant guilty of murder in the first degree, unless you believe beyond a reasonable doubt that the defendant fired the shot with malice aforethought.

Leith & Powell, of Jasper, for appellant.
J. Q. Smith, Atty. Gen., and Horace Wilkinson, Asst. Atty. Gen., for the State.

THOMAS, J. Defendant was convicted of murder in the first degree, and sentenced to the penitentiary for life.

The requisite orders of arraignment and plea of not guilty, fixing the date for defendant's trial, for the venire and the drawing of jury, and for service upon defendant of a certified copy of the indictment against him, together with a copy of the venire, etc., are each shown by the record and the return to the certiorari issuing from this court to the clerk of the circuit court.

The bill of exceptions recites that defendant introduced in evidence a copy of the venire and indictment served on him in pursuance of the court's order, and sets out the venire and a certified copy of the indictment against "Wes Johnson, alias West Johnson," charging murder in the first degree for the killing of "Effie Myatt by shooting her with a pistol." In the record proper the same indictment is recited to have been found at a regular term of the circuit court of the county, and on which the trial was had, resulting in a verdict of "guilty of murder in the first degree and * * * life sentence to the penitentiary." Hardley v. State, 79 South. 362, 363;[1] Howard v. State, 165 Ala. 18, 27, 50 South. 954. The order for the venire (erroneously contained in the record as first filed in this court) is shown to have been correctly and duly made and entered in the trial court, by the return of the clerk of the circuit court to the writ of certiorari issuing in said case from this court. Gen. Acts 1909, p. 319, § 32; Cosby v. State, 80 South. 803;[2] White v. State, 201 Ala. 387, 78 South. 449; Cain v. State, 16 Ala. App. 303, 77 South. 453.

Defendant's motion to quash the venire was properly overruled. The slips of paper on which were written the names of special jurors duly drawn for the trial of defendant, on the charge of murder in the first degree, were delivered to the clerk of the court, who prepared a list thereof, together with the regular jurors drawn and summoned for the week in which the trial was set, being the venire in said case, and a certified copy of said indictment, which papers, delivered by the clerk to the sheriff, in compliance with the mandate of the law and the court's order, were forthwith served upon the defendant by the sheriff.

[1] There was no error in the court's excusing "at the request of the state" those jurors drawn, summoned, and in attendance on the court for the trial of defendant on said charge, for the reason and on the ground that said jurors did, under oath, declare that they "had a fixed opinion against capital punishment or would not convict on circumstantial evidence." The statute provides that—

"All laws, general, special or local, regulating the selection, drawing, summoning or impaneling of grand, or petit juries, or prescribing the qualifications of jurors, or defining who are exempt from jury service, or exempting certain persons or classes of persons, from service upon juries, are hereby expressly repealed, it being the intent of the Legislature, that, this act shall be the exclusive law on such subjects, in all the courts of the state of Alabama. * * * Whenever any person or persons stand indicted for a capital felony, the court must on the first day of the term, or as soon as practicable thereafter, make an order commanding the sheriff to summon not less than fifty nor more than one hundred persons including those drawn and summoned on the regular juries for the week set for the trial of the case, and shall then in open court draw from the jury box the number of names required with the regular jurors drawn and summoned for the week set for the trial to make the number named in the order, and shall cause an order to be issued to the sheriff to summon all persons therein named to appear in court on the day set for the trial of the defendant and must cause a list of the names of all the jurors summoned for the week in which the trial is set, and those drawn as provided in this section, together with a copy of the indictment, to be forthwith served on the defendant by the sheriff, and the defendant shall not be entitled to any other or further notice of the jurors summoned or drawn for his trial nor of the charge or indictment upon which he is to be tried. On the day set for the trial, if the cause is ready for trial, the court must inquire into and pass upon the qualifications of all the persons who appear in court in response to the summons to serve as jurors, and shall cause the names of all those whom the court may hold to be competent jurors to try the defendant or defendants to be placed on lists, and if there is only [one] defendant on trial shall require the solicitor to strike off one name and the defendant to strike off two names, and in case there are two or more defendants on trial the solicitor shall strike one and every defendant shall strike one name and they shall in this manner continue to strike names from the list until only twelve names remain thereon. The twelve thus selected shall be sworn and impaneled as required by law for the trial of the defendant or defendants." Gen. Acts 1909, pp. 305, 318, 319, § 32.

The fact that a juror has a fixed opinion against capital punishment or will not convict on circumstantial evidence is by statute

[1] 202 Ala. 24.    [2] 202 Ala. 419.

made a ground or cause of challenge by the state. Code 1907, § 7278; White v. State, 78 South. 449, 450;[3] Russell v. State, 78 South. 916, 917;[4] Thayer v. State, 138 Ala. 39, 49, 35 South. 406; Jackson v. State, 74 Ala. 26. There was no error in the manner of exercising such challenge by the state, nor in the excusing of such disqualified jurors in the instant case.

The question by defendant, "There is a good deal of shooting going on around Christmas time?" (to which objection was sustained and exception taken), manifestly called for immaterial evidence.

[2] A witness, Will Vassar, testified for the state that Howard Metcalf was in the house the night Effie was killed and when several shots were heard; that a short while before the shooting defendant's brother had said to defendant, "I would kill the bitch"; that at the time defendant made this remark Effie Myatt was in the house; and that witness could not remember whether defendant or said Effie went out of the house first. As a witness for the defendant, one Metcalf testified that he was at the house where the party was being held on the night Effie Myatt was killed; that he did not hear defendant say anything "about hurting or killing anybody"; that after the shooting defendant went home with witness and "had a pistol with him"; that defendant "might have been talking with Effie Myatt, * * * might have asked her to let him go home with her," and might have said in Will Vassar's presence that he was going to "kill the d—— bitch." Witness was in the back of his house when Quil Bankhead and Effie Myatt came to the door to get a package from witness' wife, and a short while after they went away he heard four shots fired, and Effie's death was reported. State's counsel then asked said witness:

"[Defendant's counsel] asked you if you heard this defendant, Wes Johnson, say anything there that night and you started to say something; just tell what you heard him say."

Objection by the defendant, that the question called for irrelevant testimony, was overruled by the court, and exception was duly reserved. Witness answered:

"Nothing more than he said that evening as we went on home—that if he was to kill anybody he would go home and kill his wife; he had his pistol with him when he said it."

Aside from the fact that it was calling for the full answer to a question theretofore propounded to witness by defendant's counsel, the evidence was in the nature of a declaration against interest, by defendant a few moments after the homicide, having with him a pistol, and after he was leaving the place of the killing, tending to illustrate the further testimony of Metcalf that, after he saw the defendant that evening, defendant went away and was not seen "any more after that night until they went to Missouri and brought him back" under arrest; that is to say, after these declarations and the conduct of the defendant detailed in evidence, the statement in question tended to explain defendant's flight or going to Missouri— whether it was because of a guilty conscience and fear of the penalty of the law, or a mere going thereto on some lawful mission.

[3] The statement of the deceased, "too much shooting out here," not being made in the presence of the defendant, was incompetent evidence of the fact that many shots were fired on said night, or that other shots were fired aside from that causing her death; it was not so related to the homicide as to be a part thereof.

After the defendant had testified in his own behalf and closed his evidence, over defendant's objection and exception, the state was permitted to ask one W. T. Printing, "Do you know his [defendant's] general character and reputation in the community in which he lived up to the time of this killing last Christmas?" To which the witness answered, "Yes, sir." Defendant objected to the question, on the ground that he had not put his character in issue, and that the evidence was irrelevant. The witness was permitted, without further objection, to say:

"It was bad; I knew his reputation for truth and veracity up to that time [the time of the homicide], and from that reputation I would not believe him on oath."

[4] When a defendant testifies in his own behalf, he puts in issue his character for truth and veracity. He may thereafter be impeached for truth and veracity as a witness:

(1) By evidence showing or tending to show that his general reputation in the community where he lived before, or to the time of the commission of the offense for which he is being tried, was bad, and that it was such as to militate against the probability of his testifying to the truth in a cause in which he was interested; that is to say, by way of impeachment of a defendant testifying, his general bad character may be proved, without asking the further question of the impeaching witness whether he would believe him on oath in a court of justice. Such evidence of general bad character, however, must be limited to a time preceding the commission of the offense for which the defendant is on trial. Smith v. State, 197 Ala. 193, 72 South. 316; Byers v. State, 105 Ala. 31, 16 South. 716; Mitchell v. State, 94 Ala. 68, 73, 10 South. 518; B'ham Union Ry. Co. v. Hale, 90 Ala. 11, 8 South. 142, 24 Am. St. Rep. 748; Cox v. State, 162 Ala. 66, 70, 50 South. 398; Rains v. State, 88 Ala. 91, 98, 7 South. 315; Holland v. Barnes, 53 Ala. 83, 25

[3] 201 Ala. 387.          [4] 201 Ala. 572.

Am. Rep. 595; DeKalb Co. v. Smith, 47 Ala. 407; Fields v. State, 121 Ala. 16, 18, 25 South. 726; Ward v. State, 28 Ala. 53; McDaniel v. State, 97 Ala. 14, 12 South. 241; McCutchen v. Loggins, 109 Ala. 457, 465, 19 South. 810.

(2) A defendant as a witness may be impeached on direct examination, not only by an inquiry as to his general character, but by his general reputation or character for truth and veracity in the neighborhood in which he lived (Davenport v. State, 85 Ala. 336, 5 South. 152), and whether, from the knowledge of such character at the time of the trial, the impeaching witness would believe the defendant on oath as a witness. Of necessity, such opinion evidence may extend to the time of the trial. Smith v. State, 197 Ala. 193, 199, 72 South. 316; Cox v. State, 162 Ala. 66, 68, 50 South. 398; 1 Greenl. Ev. § 444b; 2 Wig. Ev. § 889 et seq. The defendant was not denied the right, by cross-examination of the impeaching witness, to show his general reputation in his community for truth and veracity to the time of the trial. There was no reversible error committed in the admission of such impeaching evidence.

The court gave, at the request of the state, written charge (which we denominate 13) as follows:

"I charge you, gentlemen of the jury, that if you believe from the evidence beyond a reasonable doubt that the defendant at the time of the shooting was perpetrating an act greatly dangerous to the lives of persons present and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive Effie Myatt of life and did so kill Effie Myatt, then he would be guilty of murder in the first degree."

The statute declares that every homicide perpetrated (1) by poison (Howerton v. State, 191 Ala. 13, 67 South. 979; Mitchell v. State, 60 Ala. 26, 28), or by lying in wait (Patterson v. State, 191 Ala. 16, 67 South. 997, Ann. Cas. 1916C, 968), or by any other kind of willful, deliberate, malicious, and premeditated killing (Mitchell v. State, supra, 60 Ala. 28; Ex parte Brown, 65 Ala. 446, 447; Watson v. State, 82 Ala. 10, 2 South. 455; Amos v. State, 83 Ala. 1, 5, 3 South. 749, 3 Am. St. Rep. 682; Lang v. State, 84 Ala. 1, 5, 4 South. 193, 5 Am. St. Rep. 324; Cleveland v. State, 86 Ala. 1, 9, 5 South. 426; Ezell v. State, 102 Ala. 101, 112, 15 South. 810; Miller v. State, 107 Ala. 40, 57, 19 South. 37; Daughdrill v. State, 113 Ala. 7, 32, 21 South. 378); (2) or committed in the perpetration of, or the attempt to perpetrate, any arson, rape, robbery, or burglary (Kilgore v. State, 74 Ala. 1; Mitchell v. State, supra); (3) or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed (Mitchell v. State, supra; Bob v. State,

29 Ala. 20; Gallant v. State, 167 Ala. 60, 63, 52 South. 739); (4) or "perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life" is murder in the first degree (Lewis v. State, 96 Ala. 6, 10, 11 South. 259, 38 Am. St. Rep. 75; Mitchell v. State, supra, 60 Ala. 29; Fields v. State, 52 Ala. 348; Holley v. State, 75 Ala. 14, 19; Judge v. State, 58 Ala. 406, 409, 29 Am. Rep. 757; Smith v. State, 154 Ala. 31, 34, 45 South. 626; Gallant v. State, supra; Sanders v. State, 181 Ala. 35, 44, 61 South. 336). The written charge given at the request of the state, under a tendency of the evidence for the defendant, falls within the fourth definition of murder in the first degree finding expression in our statute. Code 1907, § 7084.

[5, 6] The court committed no error, of which the defendant may complain, in its definition given in the oral charge of murder in the first degree. Having so charged the jury ex mero motu, and given at the state's request the charge which we have denominated 13, under defendant's theory, or a tendency of evidence introduced by the defendant of inadvertence and evidence tending to support the same, charges "b" and "c" requested by defendant, were properly refused.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.