Ronny Duncan, the appellant, was charged by separate indictments with two instances of unlawful distribution of a controlled substance. The cases were consolidated for trial and a jury convicted Duncan on both charges. In each case, he was sentenced to eight years' imprisonment (with the sentences to run concurrently) and was ordered to pay court costs and $25 to the Crime Victims' Compensation Fund. Duncan raises two issues in this appeal from his convictions.
 I
The appellant contends that the trial court erred in not requiring the prosecution to produce a case report prepared by the Alcohol Beverage Control Board ("ABC") agent to whom he was alleged to have sold cocaine.
Prior to trial, the appellant filed a general "shot-gun" motion to produce, in response to which the trial court ordered the state to produce "all statements, documents, tangible objects, reports of examinations and tests or other itemsrequired under Alabama Rules of Criminal Procedure." (Emphasis added.) In response, the State produced two "Alabama Uniform Incident/Offense Reports" prepared by Dothan police personnel and relating to the alleged cocaine sales by the appellant.
At trial, ABC Agent YeVonne Bedgood testified that she had purchased crack cocaine from the appellant on two occasions while working undercover in Dothan during October 1988. During cross-examination, it was revealed that Agent Bedgood had prepared a case report concerning the instant offenses; that this report was in the possession of another ABC agent; and that, on the morning of the day the appellant's trial began, Agent Bedgood had asked [the other agent] for [the] case report so [she] could look over it." The following then occurred:
 "Q. [by defense counsel to Agent Bedgood]: Are you aware that I filed a Motion for Production and Inspection and I'm not really sure that I've ever seen one of those reports?
 "[Prosecutor]: Your Honor, I object. That's not discoverable material. The work product of the officer is not discoverable, although the State did provide [defense counsel] a copy of the police report from the Dothan Police Department. Even that was not discoverable.
 "[Defense counsel]: Your Honor, I'm not so sure that's necessarily not discoverable; and number two, like it's been said, I have been furnished with this and I haven't seen anything or know anything of the sort of any report that's been made by Ms. Bedgood, who happens to have been the arresting officer in this matter.
 "[Prosecutor]: Your Honor, that is not true. She was not the arresting officer. She was the officer that made the buy.
 "The Court: I sustain his objection. But I will, after you finish your cross, take a look at the case report, if there is one, and make a decision then. But I will sustain the objection.
"[Defense counsel]: That will be fine."
(Emphasis added.)
The record is silent as to whether the trial judge reviewed Agent Bedgood's case report at the conclusion of her testimony. In any event, defense counsel did not mention the matter again during the State's case-in-chief. At the close of the State's evidence, defense counsel made a general motion for judgment of acquittal. No specific grounds were stated in support of this motion and it was denied by the trial court. Immediately thereafter, the prosecutor stated: *Page 1262 
 "Your Honor, if I may put on the record that I've just given [defense counsel] a copy of the report written by Agent Bedgood. Even though the rules of disclosure does [sic] not require the State to do so, I provided him with those."
Defense counsel made no reply to the prosecutor's statement and made no mention of Agent Bedgood's report at any time during the remainder of the trial.
Rule 18.1(e), A.R.Cr.P.Temp. (now Rule 16.1(e), A.R.Cr.P.), provides:
 "Except as provided in (a) [concerning statements of the defendant], (b) [concerning statements of codefendants or accomplices], and (d) [concerning reports of examinations and tests], the discovery or inspection of reports, memoranda, witness lists, or other internal state documents made by the district attorney or his agents, or by law enforcement agents, in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses, is not authorized."
Under this rule, and the trial court's discovery order which was restricted to material required to be produced under the rules of criminal procedure, the appellant was clearly not entitled to discover or inspect Agent Bedgood's reportprior to trial. See also Bogan v. State, 529 So.2d 1029, 1031
(Ala.Cr.App. 1988). The fact that the State voluntarily produced the incident reports prepared by Dothan police personnel did not in any way require or obligate the State to also produce Agent Bedgood's case report prior to trial.
When Agent Bedgood testified, however, a different "rule of discovery" became applicable. Ex parte Pate, 415 So.2d 1140,1144 (Ala. 1981). Once Agent Bedgood testified on direct examination, the appellant
 "upon laying a proper predicate, [wa]s entitled to have the [trial c]ourt, at least, conduct an in camera inspection as outlined in Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287
(1959). The trial court could determine initially (1) whether the [report] made by the [agent] before trial differed in any respects from statements made to the jury during trial, and (2) whether the [report] requested was of such a nature that without it the defendant's trial would be fundamentally unfair. Cooks [v. State, 50 Ala. App. 49, 276 So.2d 634, cert. denied, 290 Ala. 363, 276 So.2d 640 (1973)]."
Ex parte Pate, 415 So.2d at 1144. See also Bogan v. State, 529 So.2d at 1031.
Under 18 U.S.C. § 3500 (1988), which is commonly referred to as "the Jencks Act," a federal criminal defendant is not entitled to inspect a statement or report prepared by a government witness "until said witness has testified on direct examination in the trial of the case." § 3500(a). Once a witness testifies and the defendant makes a proper request therefor, the government must produce that portion of any statement or report of the witness which "relates to the subject matter as to which the witness has testified." § 3500(b). If the government asserts that the statement or report contains information relating to matters other than those testified to by the witness, the trial court is required to make an in camera inspection of the statement or report to determine which, if any, portions thereof are to be withheld from the defendant. § 3500(c). The principal purpose of the Jencks Act "is to facilitate cross-examination." Krilich v.United States, 502 F.2d 680, 682 (7th Cir. 1974), cert. denied,420 U.S. 992, 95 S.Ct. 1429, 43 L.Ed.2d 673 (1975). See Palermov. United States, 360 U.S. 343, 350, 79 S.Ct. 1217, 1223,3 L.Ed.2d 1287 (1959).
With its decision in Ex parte Pate, 415 So.2d 1140, the Alabama Supreme Court clearly adopted a variation of the Jencks Act. Johnson v. State, 555 So.2d 818, 822 (Ala.Cr.App. 1989), reversed on related grounds, Ex parte Johnson, 576 So.2d 1281
(Ala. 1991). See also Cooks v. State, *Page 1263 50 Ala. App. 49, 276 So.2d 634, cert. denied, 290 Ala. 363,276 So.2d 640 (1973). We therefore deem it appropriate to apply federal cases interpreting the Jencks Act in deciding the present case.
Although defense counsel did not make a specific request to inspect Agent Bedgood's case report, compare Ex parte Johnson, 576 So.2d at 1284, it is clear from the portion of the transcript quoted above that the trial court understood that that was the action desired. Accordingly, we find that this issue was preserved for appellate review. See Lewis v. UnitedStates, 340 F.2d 678, 682 (8th Cir. 1965) ("no 'ritual of words' is required to invoke the Jencks Act"); Ogden v. United States,303 F.2d 724, 733 (9th Cir. 1962), cert. denied, 376 U.S. 973,84 S.Ct. 1137, 12 L.Ed.2d 86 (1964) (while " '[n]o ritual of words' is required, . . . the defendant must plainly tender to the Court the question of the producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry").
It is clear that, under Ex parte Pate, once Agent Bedgood testified and defense counsel indicated that he wished to inspect her case report, the appellant was entitled, at a minimum, to have the trial court examine the report in camera.
Consequently, the trial court erred in requiring defense counsel to complete his cross-examination of Agent Bedgood without the minimum in camera review of her case report. Leachv. United States, 320 F.2d 670, 671 (D.C. Cir. 1963). However, in this case defense counsel stated that such a course of action "would be fine." Furthermore, any error in this regard is subject to harmless error analysis. See Rosenberg v. UnitedStates, 360 U.S. 367, 371, 79 S.Ct. 1231, 1234, 3 L.Ed.2d 1304
(1959); United States v. LaRocca, 219 F. Supp. 53, 58 (W.D.Mo. 1963), affirmed, 337 F.2d 39 (8th Cir. 1964).
At the close of his case-in-chief, the prosecutor provided defense counsel with a copy of Agent Bedgood's report. The appellant does not argue that he received the report "too late in the trial to serve his interests" nor does "he indicate in any way how he might possibly have been harmed by the delay."United States v. Haldeman, 559 F.2d 31, 77-78 (D.C. Cir. 1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250
(1977). See also id., nn. 111 and 112. In fact, the appellant has not even alleged that this report, which is not a part of the record before this Court, contained information which would have assisted him in his cross-examination of Agent Bedgood. Furthermore, after receiving the report, the appellant did not seek to recall Agent Bedgood. See United States v. Guerra,334 F.2d 138, 142 (2d Cir.), cert. denied, 379 U.S. 936,85 S.Ct. 337 13 L.Ed.2d 346 (1964) (where Jencks Act materials were provided in an untimely manner, the defendant's failure to recall the witness precluded him from asserting on appeal that "the delay in production worked to his disadvantage"). Cf.United States v. Pope, 574 F.2d 320, 327 (6th Cir.), cert. denied, 436 U.S. 929, 98 S.Ct. 2828, 56 L.Ed.2d 774 (1978) (where trial court allowed witness to be recalled, error occasioned by late production of the witness's statement was rendered harmless). Instead, after the interchange quoted above, defense counsel resumed cross-examination of Agent Bedgood and never again mentioned the matter of her case report. Under the circumstances of this case, the trial court's error in denying the appellant access to this report was undoubtedly harmless. Leach v. United States, 320 F.2d at 672; Rule 45, A.R.App.P.
Moreover, defense counsel clearly acquiesced in the trial judge's plan to hold an in camera review of the case reportafter cross-examination of Agent Bedgood and "is now estopped to complain of any alleged insufficiency of that action. Cf.Phillips v. State, 527 So.2d 154, 156 (Ala. 1988) ('a defendant cannot by his own voluntary conduct invite error and then seek to profit thereby')." Lochli v. State, 565 So.2d 294, 299
(Ala.Cr.App. 1990).
 II
The appellant asserts that the trial court erred in imposing sentence upon him without allocution. *Page 1264 
It is without dispute that, prior to sentencing a defendant convicted of a felony, "the sentencing court must ask the convicted person if he has anything to say as to why the sentence of law should not be imposed upon him." Ex parteAnderson, 434 So.2d 737, 737-38 (Ala. 1983). Accord, Rule 8(b)(1), A.R.Cr.P.Temp. (now Rule 26.9(b)(1), A.R.Cr.P.). Both the judgment entries and the case action summary entries in the appellant's cases recite that allocution occurred prior to the imposition of sentence. However, there is nothing in the court reporter's transcript of the sentencing hearing that could be deemed an allocution. Compare Jones v. State, 555 So.2d 333,336 (Ala.Cr.App. 1989) (" 'Anything further from anybody now before I take this recess' " sufficient as "[t]here are no magic words that a trial judge must recite before a defendant is afforded a proper allocution").
"It is well settled that recitals in the judgment [entry] import absolute verity, unless contradicted by other portions of the record." Harper v. City of Troy, 467 So.2d 269, 272
(Ala.Cr.App. 1985); Traylor v. State, 466 So.2d 185, 188
(Ala.Cr.App. 1985). In this case, the judgment entries are contradicted by the court reporter's transcript. Where such a conflict exists, this Court must "remand th[e] cause to the trial court with directions to resolve the conflict and determine if a proper allocution did in fact occur.[1] If there was no allocution, the trial court is directed to conduct a new sentencing hearing in which a proper allocution is provided."Ebens v. State, 518 So.2d 1264, 1269 (Ala.Cr.App. 1986) (footnote added), followed in Maul v. State, 531 So.2d 35, 36
(Ala.Cr.App. 1987). The trial court is further directed to make a return to this Court showing that it has complied with these instructions within 60 days from this date.
REMANDED WITH DIRECTIONS.
All Judges concur.
[1] Our research has revealed one case in which this Court held that a judgment entry controlled where there was a conflict between it and the court reporter's transcript. Hopkins v.State, 51 Ala. App. 510, 513, 514, 286 So.2d 920, 922, 923
(1973). Howard v. State, 165 Ala. 18, 50 So. 954 (1909), was cited as authority for this position. However, Howard involved a conflict between the judgment entry and the bill of exceptions, 165 Ala. at 27, 50 So. at 957, rather than a conflict between the judgment entry and the court reporter's transcript. Moreover, in this case, the case action summary entries were obviously made by the use of a rubber stamp. In such a situation, this Court will not elevate form over substance. Neal v. State, 257 Ala. 496, 497, 59 So.2d 797, 799
(1952) (refusing to hold that judgment entry controlled in conflict with court reporter's transcript on question of whether the defendant was present when the trial court answered a question posed by the jury after deliberation had begun).