168 So. 454

## KARASEK v. STATE.

### 6 Div. 811.

Court of Appeals of Alabama.

Jan. 14, 1936.

Rehearing Denied May 19, 1936.

Berkowitz & McCoy, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Francis M. Kohn, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant, appealing from a judgment of conviction of the offense of manslaughter in the second degree, states his case here, through the instrumentality of his alert attorneys, as follows:

"The ·Appellant, Perry Karasek, was charged by indictment, with killing one T. P. Mealey, by negligently driving an automobile against a gasoline pump, thereby knocking said ·gasoline pump upon or against said T. P. Mealey, the indictment charging the offense of manslaughter in the second degree. .

"The undisputed evidence showed that the deceased, while walking along 26th Street North at or near the corner of 10th Avenue in the City of Birmingham at or about one o'clock A. M., was struck by a gasoline pump which had been knocked over by an automobile driven by the appellant. At the time of his death, the deceased was either standing at or near the pump, or in walking along the street, had just passed a foot or two beyond it. The pump was located near the corner of 26th Street and 10th Avenue and was on the sidewalk at the property line of the Consumers Ice ·Company. There was a curbcut from the street from 26th Street leading up to the ice house of the Consumers Ice Company to the gasoline pump. The appellant admitted that about an hour before he had been to a Legion dance at Tarrant City, Alabama, where he had had one drink.

"The witness, C. Ferlisi, testified that he smelled 'a little bit of whiskey' on the defendant, but there is no testimony that the defendant was intoxicated or drunk in any degree. There· was no other traffic on the street at the time of the accident and the defendant contended that he made the cut across to get to what looked ·to him to be a filling station, since, immediately prior to the accident, his gasoline tank gauge showed it to be empty, and his car had begun to 'miss.' He stated further that he did not see the deceased until he was almost upon him and that in an effort to avoid striking the deceased, he ran his car into the gasoline pump.

"The testimony further showed that there was a small light or bulb at the top of the gasoline pump. There was not a light on the platform next to the pump but there were lights on the inside of the office building of the Consumers Ice Company.

"Witnesses for the State testified that the automobile immediately prior to the accident was being driven at a rate of speed of about thirty-five to forty miles per hour. The defendant testified that his rate of speed was about twenty or twenty-five miles per hour. .

"Lillie Mae Wesley, a witness for the State, testified that the scene of the accident at that time, 'looked like a filling station.'"

The Attorney General, representing the state, agrees that we adopt the statement quoted above, for purposes of our decision, except that he calls our attention to the fact that the testimony of the state's witnesses was to the effect that appellant was driving his car at the rate of speed of from "thirty five to forty five miles per hour" immediately prior to the fatal accident. We might add, as our own observation from a reading of the bill of exceptions, that the testimony on behalf of. the state tended to show, further, that appellant approached the place where his car was driven against the gasoline pump, while driving along the "left hand side" of the city street he was traversing, and that the speed of his car was not slackened from the max-

imum given by the state's witnesses up until the time it actually struck the gasoline pump.

All that is quoted and stated hereinabove seems to us to give a fair picture of the case made by the state's testimony, not seriously controverted by that given on behalf of appellant.

 The only question apparent that has "given us pause" is the one as to whether or not the trial court erred in refusing to give to the jury at appellant's request the general affirmative charge to find in his favor.

We have concluded that he did not.

The law seems now clearly and definitely settled, to the effect that one causing the death of another, proximately as a result of being engaged in the performance of an unlawful act or, for that matter, of a lawful act in an unlawful manner, which seems to us to come to the same thing, is guilty of manslaughter in the second degree, regardless of any question of "triviality of the act being performed" or of degree of dereliction in the manner of performance. Crisp v. State, 215 Ala. 2, 109 So. 287.

Here it was open to the jury to find that appellant drove his car against the gasoline pump which crushed out the life of Mealey, as a direct result of the excessive (unlawful) rate of speed at which he was at the time operating same, to say nothing of the fact that he was driving along the "wrong side of the street."

True, it is on its face a hard case. Such an eventuality to a piece of reckless driving, at a dead hour of the morning, could never have been remotely anticipated. But the facts shown, or that could be reasonably inferred, made a case for the jury, under the law as we have stated it hereinabove. Doubtless the jury, whose responsibility it was, took into view the other side of the picture, that here, at 1 in the morning, Mr. Mealey, the deceased, peacefully passing along the sidewalk, going from his work to his home, had a right to live that was outraged in a flash as unexpectedly to him as the twelve months' imprisonment imposed upon appellant can be to him. It is all very tragic; but the jury has spoken. And we observe nowhere an erroneous action or ruling on the part of the trial court to have been made the subject of an exception in the way requisite to call into play our powers of review, not

meaning by that to state that we observe such erroneous action or ruling to have been taken or made.

The judgment is affirmed.

Affirmed.