191 So. 475

### CRUMP v. STATE.
#### 6 Div. 413.

Court of Appeals of Alabama.
May 16, 1939.

Rehearing Denied June 30, 1939.

Pennington & Tweedy, of Jasper, for appellant.

Thos. S. Lawson, Atty. Gen., and L. L. Mooneyham, Asst. Atty. Gen., for the State.

RICE, Judge.

Appellant, a young man who bore an excellent reputation, was indicted and put on trial for the offense of murder in the first degree.

It was alleged that he unlawfully and with malice aforethought killed Winfred Barton by "driving an automobile over, upon, or against him."

Upon the first trial appellant was found by the jury to be guilty of the offense of murder in the second degree. The judgment resulting was reversed, here, because of an error committed by the trial court in the matter of excusing jurors. See Crump v. State, 28 Ala.App. 103, 179 So. 392.

Upon another trial—this time for no higher offense than murder in the second degree—the jury found appellant guilty of the offense of *manslaughter in the second degree,* and fixed his punishment at im-prisonment at hard labor for Walker County for the term of one year, plus a fine of $500. From the judgment on that verdict comes this, the second appeal in the case.

█ The verdict of the jury finding appellant guilty of manslaughter in the second degree operated as an acquittal of all higher degrees of homicide included in the indictment. And renders unnecessary, here, a discussion of such questions as relate only to the higher degrees of homicide included in same. Presnal v. State, 23 Ala.App. 578, 129 So. 480; Brewington v. State, 19 Ala.App. 409, 97 So. 763.

█ We might remark in passing that, the verdict of the jury establishing the fact that the deceased named in the indictment was struck *unintentionally,* written charges requested to the effect that appellant might be convicted of offenses of even a *lower degree* than manslaughter in the second degree, but which offenses could not exist without the element of *intent,* were rendered abstract, and properly refused.

█ We have said—and it is clearly the law—that "a [the] commission of an unlawful act, resulting, proximately, in the *unintentional* death of another, renders the actor guilty of manslaughter in the second degree." (Italics presently supplied.) See Rombokas v. State, 27 Ala.App. 227, 170 So. 780, 781, certiorari denied Id., 233 Ala. 214, 170 So. 782.

Another time we said—and we repeat, here: "The law seems now clearly and definitely settled, to the effect that one causing the death of another, proximately as a result of being engaged in the performance of an unlawful act or, for that matter, of a lawful act in an unlawful manner, which seems to us to come to the same thing, is guilty of manslaughter in the second degree, regardless of any question of 'triviality of the act being performed' or of degree of dereliction in the manner of performance." See Karasek v. State, 27 Ala.App. 180, 168 So. 454, 455, where we cited Crisp v. State, 215 Ala. 2, 109 So. 287.

Or, as the distinguished Justice Stone put it, years ago: "Manslaughter in the second degree is when the homicide results from the commission of a misdemeanor * * * but which result *was not intended* or contemplated." (Italics

supplied by us.) Mitchell v. State 60 Ala. 26, 33.

■ Here, we may say the death of Winfred Barton as the proximate result of being struck by an automobile driven by appellant is admitted; certainly, it was proven without contradiction. That it was unintentionally caused is shown by all the evidence.

The sole question remaining, therefore, is as to whether or not appellant was engaged in the performance of an *unlawful act* at the time of the incident.

As to this, there are phases of the testimony which seem to us to show without dispute that appellant was so engaged. Certain it is, we believe, that the evidence was ample to support such a finding.

The exceptions reserved on the taking of testimony have each been examined. But we do not deem it worth while to discuss the rulings underlying same, seriatim.

It seems to us obvious that such rulings, without exception, were either correct or innocuous.

Appellant's keen counsel would magnify, here, the importance of some of said rulings because of the excellent character proved by said appellant upon the trial.

And, in one view, it does seem tragic for such a fine young man to be imprisoned at hard labor.

But then it was tragic for young Winfred Barton to come to his death as he did.

We fear the said astute counsel overlooks the fact that punishment for crime has a dual aspect: One, and one, only, to punish the offender—in this case the punishment inflicted under *that* aspect may seem severe. And the other, and, if possible, even more important than the first, to *deter others* from the commission of similar crimes.

Under this last aspect it is important that all those situated as was appellant at the time of the distressing occurrence giving rise to this prosecution be taught to know, among other things, these:

1. "The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is *clearly visible* (Code 1928, Sec. 1397 (61);" and,

2. "The driver of a vehicle shall not overtake and pass another vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of 500 feet (Code 1928, Sec. 1397 (61);" and,

3. "Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway *and of any other conditions then existing* (here there were anywhere from 10 to 100 people walking in the highway— coming away from some sort of school entertainment), and no person shall drive any vehicle upon a highway at such speed as to endanger the life, limb or property of any person (Code 1928, Sec. 1397 (53)." And,

4. "It shall be unlawful for any person * * * who is under the influence of liquor * * * to drive any vehicle upon any highway within this state (Code 1928, Sec. 1397 (50)."

The verdict and judgment in this case— carrying the punishment hereinabove noted —are not, we think, subject to the criticism levelled at them; when one considers their effect as a teaching agency for the dissemination of knowledge of the matters listed, assumed to be known of all people, though they are.

At any rate, we find no error for which the judgment of conviction should be reversed.

And it is affirmed.

Affirmed.

### On Rehearing.

Appellant's counsel are, it seems, intensely dissatisfied with our opinion. They are resourceful and acute; and challenge, with citation of authority, just about every ruling implicit in our decision.

But space forbids that we enter into or upon a differentiation of all the cases they cite —the opinions in which, we believe, in every instance, were written by the present author.

In retrospect, it is possible the ruling in Howard v. State, 24 Ala.App. 191, 132 So. 459, upon which they rely so confidently, should have been limited in its effect to the facts of that particular case. And that same comment may be applicable to the holding in Phillips v. State, 25 Ala. App. 286, 145 So. 169; though we are not of the opinion that the pronouncements

in either case require, in any event, a reversal of the judgment of conviction in the instant case.

Appellant's counsel say: "In this· case at several different places the State was permitted to prove over ·the timely objection of the defendant that the defendant drank some (*whiskey*—why *would* appellant's said counsel forget *that?—we* interpolate) either in Jasper some 5½ or 6 hours· before the accident and several miles from the scene of the accident, or ·at the "County line" some 3½ or 4 hours prior to the accident and some fifteen or sixteen miles from the scene of the wreck. The wreck happened ,about 9:45 (o'clock) ·or 10:00 (o'clock)."

And said counsel argue with *extreme* vigor that our own holding in the case ·of Vintson v. State, 22 Ala.App. 338, 115 So. 695, 696, requires us to order a reversal ·of the judgment of conviction here, because of the admission of the testimony ·mentioned.

But the counsel seem not to apprehend ·the holding they cite in the said Vintson ·case. It was: "Testimony as to whether or not appellant was drunk at the time ·of the fatal shooting was admissible as a part of the *res gestæ, but whether or not he 'fell off a mule,' etc., some hours prior to the occasion, and at a place some miles removed from the scene of the diffi·culty was not relevant to any issue in the ·case."* (The use of the "etc." after the words "fell off a mule," we now regret. It only had reference to being "helped back on the mule.")

We think the holding quoted was, and is, perfectly sound; but it has no appli·cation, that *we* can see, here.

In this case one of the charges against the young man, the appellant, was that he killed a man as a proximate result of operating an automobile while "under the' influence of liquor"—itself a misdemeanor. It seems to us entirely relevant and competent—perhaps, or possibly, material—to show that he had had some whiskey to drink 3½ or 4 or 5 or 6 hours before the accident.

We don't know, and the proof ·doesn't show, that such could not possibly have tended to show that he was "under the influence of liquor" at the time of the accident. The weight of such evidence was of course for the jury.

We are persuaded no erroneous ruling was made during the course of the trial. But if we are in error as to this conclusion, certain it is the result of the trial indicates—we think conclusively—that no prejudice resulted to appellant. And Supreme Court rule 45 would stand as a bulwark to prevent our ordering a reversal of the judgment of conviction—even if some of said rulings *were* technically incorrect.

The application for rehearing is overruled.

Application overruled.